UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**CAYUGA NATION, by and through its lawful
governing body, the CAYUGA NATION COUNCIL,**

*Plaintiff,*

*v.*

**DUSTIN PARKER, NORA WEBER, JOSE VERDUGO, JR.,
ANDREW HERNANDEZ, PAUL MEYER, BLUE BEAR
WHOLESALE, LLC, IROQUOIS ENERGY GROUP, INC.,
JUSTICE FOR NATIVE FIRST PEOPLE, LLC, AND C.B.
BROOKS LLC, AND JOHN DOES 1-10,**

*Defendants.*

Case No. _5:22-cv-128_ (BKS/ATB)

---

## COMPLAINT WITH DEMAND FOR JURY TRIAL

Plaintiff, the Cayuga Nation, by and through its lawful governing body, the Cayuga Nation Council (the "Nation" or "Plaintiff"), as and for its Complaint against Defendants Dustin Parker, Nora Weber, Jose Verdugo, Jr., Andrew Hernandez, Paul Meyer, Blue Bear Wholesale LLC, Iroquois Energy Group, Inc., Justice for Native First People, LLC, C.B. Brooks LLC, and John Does 1–10 (collectively, "Defendants") hereby alleges as follows:

## INTRODUCTION

1.      Indian nations exercise exclusive sovereign rights on their federal reservations, including a right, in certain circumstances, to sell goods without paying or collecting taxes. These rights historically extend to specific sales of cigarettes and tobacco products. The Nation has exercised these rights, in part, by manufacturing and selling "Cayuga" and other "native brand" cigarettes on its federal reservation (the "Cayuga Nation Reservation").

2.      Led by Defendant Dustin Parker (a Cayuga Nation citizen with no affiliation or authority within the Nation government), Defendants have forged an association-in-fact engaged

1

in an enduring scheme to co-opt the Nation's sovereign rights, bleed its business and customer base, and steal away its revenues through the illegal sale of untaxed and unstamped cigarettes, marijuana, and various other merchandise on the Cayuga Nation Reservation.

3.       Masquerading as an official leader of the Nation, Defendant Parker has helmed this enterprise for the past four months from a parcel of real property until recently owned by the Seneca-Cayuga Nation of Oklahoma and commonly known as 126 E. Bayard Street, Seneca Falls, New York: a gas station and convenience store named Pipekeepers Tobacco & Gas (the "Property" or "Pipekeepers"). In the process, Defendants have committed a pattern of racketeering activities under 18 U.S.C. § 1961(1), including the violation of 18 U.S.C. § 2341 (trafficking in contraband cigarettes), 18 U.S.C. § 1956 (money laundering), 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity), and 21 U.S.C. § 841 (distributing or possessing a Class I controlled substance).

4.       Seeking to peacefully stamp out this racketeering, the Nation purchased the Property from the Seneca-Cayuga Nation of Oklahoma (from whom Defendant Justice for Native First People, LLC was purportedly leasing the Property, which, in turn, knowingly gave dominion to Defendant Parker to operate the enterprise therefrom) in late December 2021. But when the Nation rightfully assumed possession of the Property in the early morning of January 1, 2022, a conflict arose, culminating in Defendant Weber stabbing a Nation police officer in the leg and being taken into police custody.

5.       Defendant Parker, for his part, interfered with the arrest of Defendant Weber and was issued a criminal appearance ticket for his actions, but was permitted to leave on his own volition.

6.      And so the enterprise continues, as Defendant Parker and his affiliate Defendants—flush with cash and inventory from their illegal enterprise—run a seat-of-the-pants operation, courting financial backers and looking for the next place to transiently set up shop.

7.      For the time being, it appears Defendants have found such a place, surreptitiously working day in and day out to convert a single family residence located at 7153 State Route 90N in the Town of Montezuma into a makeshift convenience store, outfitting it with a drive-thru window and fortifying its exterior with security cameras and privacy gates more suited for a drug house than a mom-and-pop store.

8.      Because this ongoing enterprise violates the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Nation has been directly and proximately injured as a result, the Nation files this civil RICO action to put an end to Defendants' operation once and for all, and to obtain treble damages for the injuries it has suffered.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the claims in this action pursuant to 18 U.S.C. § 1964 and 28 U.S.C. §§ 1331 and 1367.

10.     Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this District, reside in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

11.     Plaintiff, the Cayuga Nation, is a federally-recognized sovereign Indian nation. *See* Indian Entities Recognized by and Eligible to Receive Services From The United States Bureau of Indian Affairs, 86 Fed. Reg. 7554, 7555 (Jan. 29, 2021). The federal government recognizes the

Nation as the same entity with which it entered the Treaty of Canandaigua of 1794, 7 Stat. 44. It is governed by the Cayuga Nation Council.

12.     This action is filed by the Nation at the direction of, and under the authority of, its federally-recognized Nation Council. *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1 (D.D.C. 2019); Letter from Assistant Secretary–Indian Affairs Tara Sweeney (Nov. 14, 2019) (recognizing the Halftown Council "as the Nation's governing body *without qualification*" and that "[t]he Halftown Council is the Nation's government *for all purposes*."

13.     Defendant Dustin Parker is a natural person and member of the Cayuga Nation and resident of Seneca County, New York.

14.     Defendant Nora Weber is a natural person and resident of Seneca County, New York.

15.     Defendant Jose Verdugo, Jr. is a natural person and resident of St. Lawrence County, New York.

16.     Defendant Andrew Hernandez is a natural person and resident of Ontario County, New York.

17.     Defendant Paul Meyer is a natural person and resident of Cayuga County, New York.

18.     Defendant Blue Bear Wholesale, LLC is a foreign limited liability company duly authorized and registered to do business in New York, with a registered agent at 76 Geronimo Lane, Akwesasne, New York.

19.     Defendant Iroquois Energy Group, Inc. is a New York domestic business corporation with an address of 5677 Transit Road, Suite 212, Lockport, New York.

20.     Defendant Justice for Native People First, LLC is a New York domestic limited liability company with an address of 126 East Bayard Street, Seneca Falls, New York.

21.     Defendant C.B. Brooks LLC is a New York domestic limited liability company with an address of 2 Court Street, Auburn, New York.

22.     The "John Doe" Defendants are other individuals, at least some of whom are believed to be Nation citizens, whose identities cannot be presently ascertained, but who are also responsible for the acts complained of herein and are, upon information and belief, all residents of Seneca County, New York.

## FACTUAL BACKGROUND

### A.     The Cayuga Nation and Its Reservation

23.     From time immemorial, the Cayuga Nation and its people resided in what is now upstate central New York.

24.     In 1794, the United States entered the Treaty of Canandaigua with the Cayuga Nation and certain other Indian nations in New York, to resolve significant disputes that existed between the United States and those Indian nations. *See* Treaty of Canandaigua of 1794, 7 Stat. 44.

25.     In the Treaty of Canandaigua, the United States recognized a federal reservation for the Cayuga Nation comprising 64,015 acres—located within what today are Seneca and Cayuga Counties in upstate central New York—and pledged that the "reservation[ ] shall remain theirs, until they choose to sell the same to the people of the United States, who have the right to purchase." Treaty of Canandaigua of 1794, art. II, 7 Stat. 44, 45.

26.     The Cayuga Nation's reservation is within the Nation's ancestral homelands, which originally comprised more than 3 million acres.

27.     Congress has not disestablished the Cayuga Nation's federal reservation, nor authorized the sale of the Nation's reservation lands. *See generally Cayuga Indian Nation of N.Y. v. Seneca Cnty.*, 260 F. Supp. 3d 290, 307–15 (W.D.N.Y. 2017) (collecting authorities). "[E]very federal court that has examined whether the Cayuga reservation was disestablished or diminished by Congress has answered that question in the negative." *Cayuga Indian Nation of N.Y. v. Gould*, 14 N.Y.3d 614, 639 (2010).

28.     The Treaty of Canandaigua recognized that the lands "reserved" to the Cayuga Nation were for the Nation's "free use and enjoyment thereof." Treaty of Canandaigua of 1794, art. IV, 7 Stat. 44, 45.

29.     With regard to these lands, the Supreme Court "has consistently recognized that Indian tribes retain attributes of sovereignty over both their members and their territory." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 206 (1987) (internal quotation marks omitted), *superseded by statute as stated in Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014).

30.     Among those attributes of sovereignty, Indian nations enjoy exclusive privileges to conduct certain economic activity on their own reservations free from interference by the State, including with regard to the application of state tax obligations.

31.     As summarized by the Supreme Court in *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148 (1973), "in the special area of state taxation, absent cession of jurisdiction or other federal statutes permitting it, there has been no satisfactory authority for taxing Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation, and *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164 (1973), lays to rest any doubt in this respect by holding that such taxation is not permissible absent congressional consent."

32.     Thus, state taxes on personal property located within a reservation, a state license fee sought to be applied to a reservation Indian conducting a cigarette business for the Tribe on reservation land, and state cigarette sales taxes, as applied to an Indian nation's on-reservation sales to its own members, are foreclosed. *Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 480 (1976); *Washington v. Confederated Tribes of the Colville Indian Rsrv.*, 447 U.S. 134, 160–61 (1980).

33.     Where state taxes are imposed on non-Indians—such as a state cigarettes sales tax imposed upon a non-Indian purchaser of cigarettes—state taxes may sometimes be applied, even for transactions a non-Indian conducts with an Indian nation on its reservation. *See Moe*, 425 U.S. at 481–82. And a State may impose certain "burdens" on an Indian nation to aid the State's collection and enforcement of such taxes. *Id.* at 483.

34.     But even with regard to transactions with non-Indians, Indian nations remain entitled, on their own reservation lands, to conduct certain transactions with non-Indians free from state tax and regulatory obligations. Thus, the Supreme Court has explained that state interests in taxation and regulation must at times yield to an Indian nation's legitimate "interest in raising revenues for essential governmental programs," 447 U.S. at 156, which "is strongest when the revenues are derived from value generated on the reservation by activities involving the Tribes and when the taxpayer is the recipient of tribal services," *id.* at 156–57.

35.     In line with these principles, the Cayuga Nation conducts certain economic activity on its own reservation free from state tax and regulatory laws, even in transactions with non-Indians. In particular and as relevant here, the Nation manufactures "Cayuga brand" cigarettes on its reservation—and thus generates value on the reservation—which it sells to enrolled Cayuga members and to non-Indians without being required to comply with state cigarette sales tax

obligations. The State of New York has never sought to impose its cigarette sales tax obligations on the Cayuga Nation's sales of these or other "native brand" cigarettes.

36.     Indeed, the Nation uses the proceeds of its cigarette sales to raise critical revenues for essential governmental programs for its members and the public. These revenues help fund many governmental programs, including the Cayuga Nation Police Force, which protects Nation members, Nation properties, and non-Indian customers who come to the reservation for gaming, purchases of cigarettes and other goods, and other activities.

**B.      Defendants' Pipekeepers Operation**

37.     On the weekend of September 4, 2021, Defendants began operating their enterprise from the Pipekeepers store within the boundaries of the Cayuga Nation Reservation, engaging in the unlawful activity of selling untaxed and unstamped cigarettes, hand-rolled loose tobacco cigarettes (known as "rollies") by the bag full, marijuana, and various and sundry other merchandise.

38.     Defendant Parker led the operation and chain of command under the cloak of the Property lease Defendant Meyer executed with Seneca-Cayuga Nation of Oklahoma on Defendant Justice for Native First People, LLC's behalf. Defendants Verdugo and Hernandez helped manage the Pipekeepers storefront, while Defendant Weber assisted with bookkeeping and day-to-day affairs.

39.     The lease between Defendant Justice of Native First People, LLC (executed by Defendant Meyer) was for the, upon information and belief, below market rate of $1,000 per month.

40.     Upon information and belief, Defendant Justice for Native First People, LLC permitted Defendant Parker to operate the Pipekeepers business from the Property for a substantial payment each month, essentially profiting from Pipekeepers' illicit cigarette business.

41.     Defendant Parker does not represent the Cayuga Nation, is not a member of its governing body, and holds no authority elected or otherwise in the conduct of its affairs—nor do any of the other Defendants. While Pipekeepers was under Defendants' control, it was absolutely not a Cayuga Nation store or otherwise operated in any way with the approval or consent of the Cayuga Nation.

42.     Yet, in a recent December 9, 2021 filing in this District Court, Defendant Parker declared: "I am . . . one of the many leaders of the Cayuga Nation . . . working in an official capacity running the Cayuga Nation Pipekeepers Store" and that "Pipekeepers is a 100% complete and exclusively run Cayuga Nation Store solely by Cayuga Nation members as myself[.]" *Cayuga Nation v. Diebold, et al.*, 6:21-cv-06630-CJS, Dkt. No. 31, ¶¶ 1 and 6.

43.     Not only is that fundamentally false, Pipekeepers' existence was in direct violation of the Cayuga Nation Amended and Restated Business License and Regulation Ordinance (the "Ordinance"), which prohibits the operation of any business on Nation land without a business license issued by the Nation, and which forbids Nation citizens from engaging in any business on Nation land that directly or indirectly competes with any business conducted by the Nation.

44.     In fact, the Nation sought relief against Defendant Parker in the Cayuga Nation Civil Court, while the Cayuga Nation Police Department hired David Miller, a private investigator licensed by the State of New York, to further investigate the Pipekeepers operation. Mr. Miller filed a declaration dated December 1, 2021 in the United States District Court for the Western District of New York reciting his findings, which is attached hereto as **Exhibit 1**.

9

45.     When Mr. Miller visited the Pipekeepers store on November 30, 2021, he found and documented (through photographs) that the Pipekeepers store had a large sign in the parking lot that said "Cayuga Nation Bayard Street Store," and Defendant Parker working in the store, behind a counter. Exhibit 1, ¶¶ 5 and 8,  Exs. A and B.

46.     Pipekeepers was selling, and Miller purchased, several different types of cigarettes, which did not bear New York state tax stamps. *Id.*, ¶¶ 9–14, Exs. C–G. In addition, Pipekeepers was selling, and Miller purchased, so-called "rollie" cigarettes that were not labeled in accordance with federal law. *Id.*, ¶¶ 10 and 13, Ex. D.

47.     All manufacturers of cigarettes must obtain a permit to manufacture cigarettes and must file a bond with the United States Department of Treasury. *See* 26 U.S.C. §§ 5711, 5712. Cigarettes packaged in the United States must be packaged, marked, and labeled in accordance with regulations promulgated by the Secretary of Treasury. 26 U.S.C. § 5723.

48.     Subject to certain exceptions not pertinent here, a person is criminally prohibited from shipping, transporting, receiving, possessing, selling, distributing, or purchasing more than 10,000 cigarettes that bear no valid state tax stamps in a state requiring such stamps. 18 U.S.C. § 2342(a) and 2344(a). New York requires tax stamps. N.Y. Tax Law § 471.

49.     Moreover, when the Nation took possession of the Property on January 1, 2022, it also took possession of a vehicle Defendant Weber used in an effort to run down Nation Police; and in it, they discovered a bag with approximately $60,000 cash.

**C.     Defendants' RICO Enterprise**

50.     Defendants operated, and continue to operate, an association-in-fact RICO enterprise engaged in interstate and foreign commerce that directly targets the Nation through the patterned commission of various crimes.

10

51.     As demonstrated by the deceptive "Cayuga Nation Bayard Street Store" Pipekeepers signage, Defendants' RICO enterprise falsely operates under the "Cayuga Nation" flag, claiming Cayuga Nation rights, privileges, customers, and revenues as its own, while being constituted of a criminal faction that has nothing whatever to do with the Nation. In the process, it robs the Nation of its customer base and business revenues, and poses a particular threat to the Nation.

52.     From September 4, 2021 through December 31, 2021, Defendants' enterprise operated out of the Pipekeepers storefront where, upon information and belief, Defendants engaged in both interstate and foreign commerce by importing contraband cigarettes from Canada and contraband smokeless tobacco from Pennsylvania—which Defendants then sold, unstamped and untaxed, along with bags of illegal "rollie" cigarettes.

53.     Specifically, since possession of the Property on January 1, 2022, the Nation has undertaken an accounting of the remaining inventory and found cigarettes totaling over 10,000,000. Taken together, Defendants shipped, transported, received, possessed, sold, distributed, or purchased contraband cigarettes or contraband smokeless tobacco in violation of the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341–2346.

54.     In addition to selling contraband cigarettes from the Pipekeepers storefront, Defendants possessed, distributed, and dispensed marijuana—a Schedule I controlled substance as defined by section 102 of the Controlled Substances Act, 21 U.S.C. § 802—in violation of the Drug Abuse Prevention and Control Act, 21 U.S.C. § 841.

55.     All the while, Defendants Blue Bear Wholesale, LLC and Iroquois Energy Group knowingly engaged in and buttressed the RICO enterprise and shared in its profits by treating

Pipekeepers as a tax exempt sovereign nation, selling it gasoline without charging excise taxes or sales tax.

56.     Upon information and belief, during the enterprise's four-month run out of the Pipekeepers storefront alone, it generated well in excess of $1,500,000 in proceeds from unlawful activity, some of which remains in cash and some of which was deposited into one or many bank accounts, including a bank account maintained by Defendant Parker at M&T Bank.

57.     Upon information and belief, Defendant Parker, and other Defendants, deposited proceeds from the unlawful activity described above into various bank accounts or otherwise engaged in financial transactions with the intent to promote the carrying on of that unlawful activity, to conceal or disguise the nature or source of the proceeds, and to avoid transaction reporting requirements under State or Federal law in violation of 18 U.S.C. § 1956.

58.     Moreover, upon information and belief, Defendants engaged in one or more financial transactions of greater than $10,000 in monies derived from unlawful activities within the United States in violation of 18 U.S.C. § 1957.

**D.      Defendants' Racketeering Acts and RICO Enterprise Targeted and Injured the Nation**

59.     Because the Nation enjoys the unique right as a sovereign Indian nation to lawfully sell untaxed cigarettes, Defendants' conduct of unlawfully selling unstamped and untaxed cigarettes in violation of the Contraband Cigarette Trafficking Act has directly injured the Nation by stealing away customers and business revenue that would belong to the Nation but for Defendants' unlawful actions: Defendants' money laundering and unlawful financial transactions are inextricably intertwined with inflicting that injury to the Nation.

60.     The injury to the Nation was not just foreseeable, it was exactly the point of Defendants' racketeering activity and RICO enterprise: to stand in the Nation's shoes and take for themselves what benefits rightfully accrue to the Nation.

61.     That Defendants' RICO enterprise pretended to be a *Nation enterprise* while operating out of Pipekeepers leaves no doubt that the Nation was the intended target of Defendants' RICO scheme.

62.     The Nation has been directly and proximately harmed by reason of Defendants' racketeering activity and RICO scheme, and conservatively estimates its attendant lost revenue at $1,750,000, in addition to the loss of untold customers and good will.

63.     Upon information and belief, Defendants' RICO enterprise remains ongoing as they seek a financial backer and a new brick and mortar out of which to continue their unlawful activities and continue to inflict injury upon the Nation.

64.     To that end, on January 11, 2022, Defendant C.B. Brooks LLC, by signature of Defendant Paul Meyer, transferred a single family residence located at 7153 State Route 90N, Village of Cayuga, Town of Montezuma, Cayuga County (the "Planned Property") to Defendant Dustin Parker. A copy of the RP-5217 Real Property Transfer Report is attached hereto and incorporated herein as **Exhibit 2**.

65.     Defendant C.B. Brooks LLC, upon information and belief, purchased the Planned Property for only $30,000 and sold it to Defendant Parker at the grossly inflated price of $180,000.

66.     The Planned Property is not zoned for commercial use and, upon information and belief, none of the appropriate approvals have been sought or obtained from the local authorities to run a commercial operation from it.

67.     Upon information and belief, Defendant Dustin Parker together with other Defendants, are conspiring to operate their RICO enterprise out of the Planned Property *imminently*, not only having installed a drive-thru window but having fortified the property with external cameras and privacy fencing to evade law enforcement and otherwise shelter their illicit activity from public view.

68.     Absent judicial intervention, Defendants' pattern of packing up their RICO enterprise and moving from town to town to evade the law will continue to sow chaos for the Nation, local governments, law enforcement, and all those affected.

69.     Defendants' RICO enterprise must be torn up from its roots.

## FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

70.     At all relevant times, the Nation was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

71.     At all relevant times, each Defendant was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a), (c), and (d).

72.     Defendants are a group of natural and legal persons associated together in fact for the common purpose of carrying out an ongoing RICO enterprise.

73.     Defendants have organized their RICO enterprise to operate as a unit, with specific internal roles and assigned responsibilities, to accomplish the unlawful goals of their scheme.

74.     Defendants have taken, and continue to take, specific and concerted action in furtherance of their racketeering activities in violation of 18 U.S.C. § 1961(1), including the violation of 18 U.S.C. § 2341 (trafficking in contraband cigarettes), 18 U.S.C. § 1956 (money laundering), 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from

specified unlawful activity), and 21 U.S.C. § 841 (distributing or possessing a Class I controlled substance).

75.     The conduct of Defendants described herein constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

76.     The Nation has been injured as a direct and proximate result of Defendants' racketeering activity, unlawful conduct, and RICO enterprise.

77.     The Nation is entitled to recover treble damages plus costs and attorneys' fees from Defendants pursuant to 18 U.S.C. § 1964(c).

## COUNT I

### (18 U.S.C. § 1962(c))

78.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if specifically set forth herein.

79.     At all relevant times, Defendants engaged and participated in a criminal enterprise whose activities affect interstate or foreign commerce.

80.     Defendants agreed to and knowingly engaged and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity for the unlawful purpose of illegal profit.

81.     Pursuant to and in furtherance of their unlawful scheme, Defendants violated 18 U.S.C. § 2341 (trafficking in contraband cigarettes), 18 U.S.C. § 1956 (money laundering), 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity), and 21 U.S.C. § 841 (distributing or possessing a Class I controlled substance).

82.     The  acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

15

83.     Defendants have directly and indirectly engaged and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above in violation of 18 U.S.C. § 1962(c).

84.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), the Nation has been injured in the form of lost customers, business opportunities, and business revenue in the amount of $5,000,000.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants in an amount equal to three times the damages the Plaintiff has sustained pursuant to 18 U.S.C. § 1964(c), and issue an order permanently enjoining Defendants from operating or financing an illicit cigarette business within the boundaries of the Cayuga Nation Reservation.

## COUNT II

### (18 U.S.C. § 1962(a))

85.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if specifically set forth herein.

86.     At all relevant times, Defendants engaged and participated in a criminal enterprise whose activities affect interstate or foreign commerce.

87.     Defendants used income that was derived from a pattern of racketeering activity in an interstate enterprise, specifically using monies derived from unlawful conduct to facilitate the import of contraband and other goods from across state lines.

88.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

89.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), the Nation has been injured in the form of lost customers, business opportunities, and business revenue in the amount of $5,000,000.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants in an amount equal to three times the damages the Plaintiff has sustained pursuant to 18 U.S.C. § 1964(c), and issue an order permanently enjoining Defendants from operating or financing an illicit cigarette business within the boundaries of the Cayuga Nation Reservation.

## COUNT III

### (18 U.S.C. § 1962(d))

90.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if specifically set forth herein.

91.     As set forth above, Defendants agreed to and conspired to violate 18 U.S.C. §§ 1962(a) and (c).

92.     The Defendants have knowingly and intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

93.     Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

94.     This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), and (c), in violation of 18 U.S.C. § 1962(d).

95.     As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), the Nation has been injured

in the form of lost customers, business opportunities, and business revenue in the amount of $5,000,000.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants in an amount equal to three times the damages the Plaintiff has sustained pursuant to 18 U.S.C. § 1964(c), and issue an order permanently enjoining Defendants from operating or financing an illicit cigarette business within the boundaries of the Cayuga Nation Reservation.

## DEMAND

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.   Issue an order granting the judgment sought by the Plaintiff in its Complaint in the entirety;

B.   Issue an award of money damages against the Defendants and in favor of the Nation in the amount of $15,000,000 pursuant to 18 U.S.C. § 1964(c);

C.   Award Plaintiff reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c);

D.   Issue an order permanently enjoining Defendants from operating or financing an illicit cigarette business within the boundaries of the Cayuga Nation Reservation; and

E.   Grant Plaintiff such further relief as is just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues in this action.

Dated: February 10, 2022                    **BARCLAY DAMON LLP**

By: _____
David G. Burch, Jr.
Michael E. Nicholson

*Attorneys for Plaintiff*
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Tel.: (315) 425-2700