UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CAYUGA NATION, by and through its lawful governing body, the CAYUGA NATION COUNCIL,

                       Plaintiffs,

v.

DUSTIN PARKER, NORA WEBER, PAUL MEYER, JUSTICE FOR NATIVE FIRST PEOPLE, LLC, C.B. BROOKS LLC, and JOHN DOES 1–10,

                       Defendants.

5:22-cv-00128 (BKS/TWD)

---

**Appearances:**

*For Plaintiff:*
Michael E. Nicholson
David G. Burch, Jr.
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202

*For Defendants Dustin Parker and Nora Weber:*
Daniel J. Hurteau
Kasey Kaspar Hildonen
Robert McManigal
Nixon Peabody LLP
677 Broadway, 10th Floor
Albany, New York 12207

*For Defendants Paul Meyer, Justice for Native First People, LLC, and C.B. Brooks, LLC:*
Joseph A. Camardo
Camardo Law Firm, PC
127 Genesee Street
Auburn, New York 13021

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Plaintiff Cayuga Nation, by and through its governing body, the Cayuga Nation Council, claims that Defendants Dustin Parker and Nora Weber, Paul Meyer, Justice for Native First People, LLC, and C.B. Brooks, LLC, have used or invested racketeering income in an enterprise, in violation of the Racketeer Income and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a). (*See generally* Dkt. No. 1). Presently before the Court are the Cayuga Nation's motion seeking sanctions against Defendants Parker and Weber ("Parker Defendants") for spoliation of evidence, (Dkt. No. 163), and the Parker Defendants' motion seeking sanctions against the Nation for spoliation of evidence, (Dkt. No. 164). The motions are fully briefed. (Dkt. No. 192, 193, 203, 204). For the reasons that follow, the Nation's motion is granted and the Parker Defendants' motion is denied.

### II.  BACKGROUND

The facts and history of this case are set forth at length in this Court's November 3, 2025 Order denying Defendants' motions for summary judgment and judgment on the pleadings. (Dkt. No. 226). The Court assumes the parties' familiarity with these facts and need not summarize them here. Any additional facts relevant to the pending motions are set forth as necessary in the discussion below.

### III.  SPOLIATION SANCTIONS

#### A.  Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "A party seeking

sanctions based on spoliation must establish, by a preponderance of the evidence: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 374 (2d Cir. 2025) (quoting *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018)). A district court has authority to "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002). The "choice of an appropriate remedy for spoliation 'is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis.'" *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

### B. The Nation's Motion

The Nation seeks sanctions for the Parker Defendants' alleged destruction of sales ledgers for cannabis and cannabis-related products sold by Montezuma Pipekeepers. (Dkt. No. 163). The Parker Defendant oppose the Nation's motion arguing that any destruction of such sales records was a "business practice," and neither willful nor done in bad faith, they have preserved all ledgers since May 28, 2025, the date the Court ordered preservation, and the sales records are relevant to damages only, "not on the threshold issue of liability." (Dkt. No. 193, at 4, 6) (emphasis omitted).

1.      **Obligation to Preserve**

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu*, 247 F.3d at 436. A party has notice that the evidence is relevant to litigation "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). The scope of the duty "extend[s] to any documents . . . made by individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.' . . . The duty also extends to information that is relevant to the claims or defenses of *any* party, or which is 'relevant to the subject matter involved in the action.'" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 26).

Here, the Parker Defendants had notice that Pipekeepers' cannabis sales records were relevant as soon as the Nation filed and served the complaint in this matter in February 2022. (Dkt. No. 1 (complaint filed Feb. 10, 2022); *see also* Dkt. Nos. 8-1, 8-2 (affidavits of service as to Parker and Weber filed Feb. 22, 2022)). The complaint alleged ongoing racketeering activities, including the distribution or possession of cannabis, in violation of 21 U.S.C. § 841. (Dkt. No. 1, ¶ 3). The complaint also alleged that although the Nation had "assumed possession" of the Bayard Street Pipekeepers, Parker and Weber were "set[ting] up shop" in the Town of Montezuma by converting a residence "into a makeshift convenience store" where they could continue their activities. (Dkt. No. 1, ¶¶ 4, 6–7). From this allegation, the Parker Defendants were therefore on notice that their Montezuma Pipekeepers sales activities (and evidence thereof) were relevant to the present lawsuit. Further, the Nation's requests for Montezuma Pipekeepers' business records are reflected in Text Minute Entries following discovery conferences with United States Magistrate Judge Andrew T. Baxter as early as December 31, 2023. (*See*, *e.g.*, Text

4

Minute Entry, Dec. 21, 2023). The Court therefore concludes that the Parker Defendants had an obligation to preserve their handwritten cannabis sales records as early as February 2022 and yet (as detailed below) destroyed those records daily through May 27, 2025, the date Magistrate Judge Baxter issued the Text Order directing preservation. (Dkt. No. 152).

    **2.**    **Culpability**

"A party may establish a culpable state of mind by 'showing that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently.'" *ELG Utica Alloys*, 144 F.4th at 375 (alteration in original) (quotation marks omitted) (quoting *Residential Funding*, 306 F.3d at 108). "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220 (footnote omitted). *See also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 464 (S.D.N.Y. 2010) (stating that "a failure to preserve evidence resulting in the loss or destruction of relevant information is surely negligent, and, depending on the circumstances, may be grossly negligent or willful"), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012).

Early in discovery, the Parker Defendants asserted that "the [Montezuma Pipekeepers'] record keeping has been spotty because of the 'Mom and Pop' nature of the business" and difficulties they were having with banks. (Text Minute Entry Dec. 21, 2023). During a discovery conference approximately six months later, the Parker Defendants represented that they had "no sales records at all for the cannabis products." (Text Minute Entry, May 22, 2024). Noting that the Parker Defendants had sold cannabis "for most of the time they were in business," Magistrate Judge Baxter found the Parker Defendants' representation that they had no records "troubling" and directed their attorney to "follow up with their client with respect to the troubling claim that they have no information reflecting sales volume for cannabis products, which they have sold."

5

(*Id.*). In a discovery conference on September 24, 2024, Magistrate Judge Baxter noted that the Parker Defendants continued to maintain "that they have produced all available records regarding their purchases and sales of . . . cannabis products"; Magistrate Judge Baxter permitted the parties to "conduct limited discovery (preferably through depositions) regarding possible spoliation." (Dkt. No. 129).

During his deposition on May 8, 2025, Parker testified that each time a customer makes a cannabis purchase at the Montezuma Pipekeepers, an employee "record[s] the transaction, the time, the weight," and the dollar amount for the purchase on a piece of paper, or ledger, that is used "for the day." (Dkt. No. 164-5, at 146). Parker testified that each day, after "account[ing] for the monies and the weight that was sold," he throws away the paper "to dispose of it" because "[w]e don't really need to keep it, just kind of taking up space." (*Id.* at 147). All Montezuma cannabis transactions are conducted in cash. (*Id.* at 157–59).

On May 23, 2025, citing Parker's deposition testimony, the Nation filed a letter seeking leave to file a motion to compel, arguing that cannabis sales records "have been willfully destroyed during the pendency of this litigation." (Dkt. No. 151, at 1). Magistrate Judge Baxter granted the Nation's letter request, in part, and directed the Parker Defendants "to preserve all available paper and electronic records described in plaintiff's letter brief, subject to contempt sanctions if they fail to comply." (Dkt. No. 152 (Text Order, May 27, 2025)). Ultimately, the Parker Defendants provided, at most, "three-and-a-half months" of Montezuma Pipekeepers' cannabis sales records. (Dkt. No. 193, at 6; *but see* Dkt. No. 163-1, at 12 (the Nation asserting that the Parker Defendants provided "just *four days* of records (May 29, 2025–June 1, 2025) for a period of nearly *four years*")).

The Parker Defendants assert that their "practice of discarding daily handwritten ledgers was a routine business practice, not an attempt to evade discovery or destroy evidence" and that there is "no proof . . . they acted with the intent to deprive Plaintiff of relevant information or to gain an unfair advantage." (Dkt. No. 193, at 6). The Court disagrees. On May 22, 2024, Magistrate Judge Baxter specifically instructed the Parker Defendants' attorney to discuss the "troubling claim" that the Parker Defendants had no cannabis sales records despite selling cannabis during the entirety of Pipekeepers' operations, which were ongoing. (Text Minute Entry, May 22, 2024). And yet, more than a year passed and a preservation order by Magistrate Judge Baxter was required before the Parker Defendants began to preserve and provide cannabis sales records. (Dkt. No. 152 (Text Order directing preservation entered May 27, 2025)). The Parker Defendants' argument that throwing away the daily cannabis records was a regular business practice does not justify their conduct, *see Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 49 (S.D.N.Y. 2014) (rejecting the defendant's "attempts to rationalize its actions" by arguing that although destruction of laptop data "was intentional," it was "part of its normal business practice," explaining that a "a good faith explanation does not absolve a party of its culpability"), which the Court finds intentional and constitutes gross negligence and likely willfulness, *see Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 504 (S.D.N.Y. 2013) ("The intentional destruction of relevant records, either paper or electronic, after the duty to preserve has attached, is willful." (internal quotation marks and alteration omitted)).

### 3. Relevance

The Second Circuit has "held that 'a showing of gross negligence in the destruction . . . of evidence' can 'stand[ ] alone' to 'satisfy[ ] the relevance factor.'" *ELG Utica Alloys, Inc.*, 144 F.4th at 375–76 (internal quotation marks omitted) (alteration in original) (quoting *Residential Funding Corp.*, 306 F.3d at 109); *see also Residential Funding*, 306 F.3d at 108–09

("'[R]elevance' . . . means something more than being sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."). However, the presumption of relevance is rebuttable. *Pension Comm.*, 685 F. Supp. 2d at 467–69.

The Parker Defendants argue that the Nation cannot show relevance because that "the daily cannabis worksheets" bear "only on the quantification of Plaintiff's alleged damages, not on the threshold issue of liability." (Dkt. No. 193, at 4) (emphasis omitted). However, they cite no caselaw that would support the proposition that evidence of damages does not constitute relevant evidence in the context of a spoliation analysis, nor is the Court aware of any. *Cf.*, *Best Payphones, Inc. v. Dobrin*, 409 F. Supp. 3d 130, 134 (E.D.N.Y. 2018) (finding that the "[d]efendants presented sufficient evidence demonstrating that the spoliated evidence was relevant" where the defendants showed the destroyed evidence was relevant "to the valuation of Plaintiff's business; an issue related to damages"). They further argue that since they have produced more than three months of cannabis sales data "and have testified about their business operations and sales practices" "the absence of some daily handwritten ledgers does not create an 'evidentiary vacuum.'" (Dkt. No. 193, at 7). But the absence of receipts deprives the Nation of the ability to contest the credibility of Parker's testimony regarding the amount of cannabis sold at the Montezuma Pipekeepers. Thus, the Court finds the Nation has established relevance and has established spoliation. Accordingly, the Court turns to the question of sanctions.

    4.    Sanctions

The Nation requests that the Court "either strike the Parker Defendants' Answer and award a default judgment against them or issue an adverse inference instruction to the jury that it should infer the Parker Defendants destroyed the evidence because it was unfavorable to them and would fully support the Nation's merits claims and claims for damages." (Dkt. No. 163-1, at 8). The Parker Defendants oppose entry of default judgment as "unsupported by the record and

8

contrary to established law" and request that the Court "defer any decision on lesser spoliation sanctions to the date of a trial." (Dkt. No. 193, at 5).

Sanctions for spoliation of evidence should aim to accomplish three goals: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West*, 167 F.3d at 779 (quoting *Kronisch*, 150 F.3d at 126). "It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions)." *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014) (quoting *Pension Comm.*, 685 F. Supp. 2d at 469).

"[T]he Second Circuit has endorsed four factors for a district court to consider in exercising its discretion to impose sanctions pursuant to Rule 37: '(1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). A district court is free to consider "the full record in the case in order to select the appropriate sanction." *S. New England Tel. Co.*, 624 F.3d at 144 (citation omitted).

The Court finds sanctions are warranted for the Parker Defendants' destruction of the Montezuma Pipekeepers' sales records. The Court has found the Parker Defendants'

noncompliance with their disclosure obligations to be grossly negligent and likely willful. The reason for the destruction—Parker's determination that "[w]e don't really need to keep it, just kind of taking up space," (Dkt. No. 164-5, at 147), stands in direct opposition to the instruction he presumably received from his attorney at Magistrate Judge Baxter's direction. The duration of noncompliance appears to be February 12, 2022, through May 2025. Further, the Parker Defendants were certainly aware that sanctions, including spoliation sanctions, were a possibility. (Dkt. No. 117 (status report filed on May 13, 2024, by the Nation questioning the Parker Defendants' position that no cannabis records existed and arguing that an adverse inference instruction may be warranted); Dkt. No. 144 (scheduling order entered on March 13, 2025, setting date for filing motions for spoliation sanctions)). As to the appropriate sanction, as discussed below, further briefing is required.

In this case, the Nation requests entry of default judgment in their favor, or, in the alternative, an adverse inference instruction. (Dkt. No. 163-1, at 24–27). Default judgment is a "terminating sanction" and is therefore "justified in only the most egregious cases such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives." *Pension Comm.*, 685 F. Supp. 2d at 469–70. Although the destroyed Montezuma Pipekeepers cannabis sales records may disadvantage the Nation, the Nation does not contend that the absence of such records will impair its ability to establish liability at trial. *See Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-cv-6283, 2014 WL 904595, at *6, 2014 U.S. Dist. LEXIS 31509, at *16 (S.D.N.Y. Mar. 4, 2014) (finding the plaintiff was not entitled to default judgment where it had not "been shown that defendants have engaged in systematic bad-faith destruction of evidence or extreme misconduct, or that whatever loss of documents has been occasioned has caused it irremediable

10

prejudice"), *aff'd sub nom. Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620 (2d Cir. 2018). Moreover, because a terminating sanction like default judgment "is a 'drastic remedy,' it 'should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'" *West*, 167 F.3d at 779 (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)).

As noted, in the alternative, the Nation seeks an adverse inference instruction and requests that the Court instruct "the jury that it should infer the Parker Defendants destroyed the evidence because it was unfavorable to them and would fully support the Nation's merits claims and claims for damages." (Dkt. No. 203, at 13). Although "[g]ross negligence may, in certain circumstances, warrant a presumption that the destroyed evidence would have been favorable to the innocent party," *Hawley*, 302 F.R.D. at 49, "such an instruction would not be justified absent proof of prejudice that such a charge would be designed to remedy," *Klipsch Grp.*, 2014 WL 904595, at *6, 2014 U.S. Dist. LEXIS 31509, at *17. As an initial matter, it is not clear how the absence of *Montezuma Pipekeepers'* cannabis sales records would impair the Nation's ability to establish its RICO investment claim under 18 U.S.C. § 1962(a), which is premised on the use or investment of racketeering income from the *Bayard Street Pipekeepers'* allegedly illegal cannabis and tobacco sales. Thus, the Nation's proposed instruction directing an adverse inference as to liability and damages may be overbroad. *See Hawley*, 302 F.R.D. at 53 ("[T]he Court is mindful that '[a] trial ideally is a search for the truth' . . . and while spoliation can interfere with that inquiry, so too, can an overbroad sanction." (quoting *Portuondo v. Agard*, 529 U.S. 61, 77 (2000) (Ginsburg, J. dissenting)). Still, in the absence of Montezuma Pipekeepers' cannabis sales records, the Nation may face a disadvantage in establishing damages to its cannabis business that would warrant an adverse inference in connection with damages. But as

the parties have yet to address whether injury to the Nation's cannabis business is recoverable under RICO, (*see* Dkt. No. 226, at 10–11), the Court declines to make a determination as to the appropriate sanction at this juncture.[1]

      **C.**     **The Parker Defendants' Motion**

The Parker Defendants seek sanctions for the Nation's alleged "destruction of contemporaneous paper records documenting the quantity and nature of personal property" seized from the Bayard Street Pipekeepers on January 1, 2022. (Dkt. No. 164-11, at 20–26). The Nation responds that there is no basis for imposing spoliation sanctions for the destruction of paper records because the numbers recorded on the notes at issue were "read off and fully incorporated into the spreadsheet" subsequently provided to the Parker Defendants. (Dkt. No. 192, at 20 (quoting Dkt. No. 164-7, ¶ 4)).

The underlying facts are undisputed: After the Nation seized the Bayard Street Pipekeepers, it conducted an inventory of the store's products. (Dkt. No. 164-2, at 10–12). At the time, Tiffany Dwyer was an accounting assistant in the business office for Lakeside Enterprises. (*Id.* at 7). Dwyer testified that she and B.J. Radford, the Nation's Chief Financial Officer, spent "[t]wo to three days" inventorying the products and rotated between physically writing down on paper what they were counting and entering numbers into a spreadsheet Dwyer had created on a

---

[1] The Parker Defendants are advised that even if the Court concludes an adverse inference instruction is not warranted, given their intentional disposal of cannabis sales records over the course of years, some form of sanctions are likely justified. *See S. New England Tel. Co.*, 624 F.3d at 148–49 (observing that the Second Circuit has "consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions" and explaining that although "one purpose of Rule 37 sanctions may . . . be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations," sanctions also "ensure that a party will not benefit from its own failure to comply" and are "intended to serve a general deterrent effect" (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

laptop. (*Id.* at 17–19). Dwyer testified that she counted the tobacco products but not the snacks or beverages. (*Id.* at 20–21). Radford testified that cannabis was part of the inventory. (Dkt. No. 164-3, at 39; *see also* Dkt. No. 164-7 ¶ 3 (Dwyer stating that the Nation "never inventoried" products "other than tobacco and tobacco-related products and cannabis and cannabis-related products")). Dwyer testified that by the end of the process all the information was recorded in the spreadsheet. (Dkt. No. 164-2, at 19–20). Dwyer stated in her declaration that the "handwritten notes and papers created during the inventory . . . consisted solely of loose 'sticky notes' and scrap papers on which only hash marks or numbers were jotted down as various items were counted and tallied, did not include even product names." (Dkt. No. 164-7, ¶ 4). Dwyer stated that "[a]s the numbers were read off and fully incorporated into the spreadsheet that was produced in these proceedings . . . these loose 'sticky notes' and scrap papers were immediately discarded." (*Id.*).

### 1. Obligation to Preserve

The Nation asserts it "was under no duty to preserve any evidence at the time of the claimed spoliation in early January 2022" because this action "was not commenced until February 20, 2022, and . . . the Parker Defendants did not assert any claim . . . relating to the inventory until August 26, 2022," when they filed their counterclaims. (Dkt. No. 192, at 21 (citing Dkt. No. 60)). The Court rejects this assertion. The obligation to preserve arises "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch*, 150 F.3d at 126. Here, litigation became reasonably foreseeable on January 1, 2022, when the Nation sent its "police force" to seize the Bayard Street Pipekeepers and its contents. (Dkt. No. 164-3, at 28). *See Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 106

13

(E.D.N.Y. 2002) (finding that the defendant's "obligation to preserve the documents arose as early as" several months prior to the filing of the lawsuit, "when the problems with" the defendant's fifty percent shareholder "surfaced"). Indeed, the Nation's inventory of the contents of the store reflects the importance the Nation attached to the items it found inside at the time.

Next, the Nation argues that even if it was on notice, the duty to preserve did not require it to keep "every scrap of paper." (Dkt. No. 192, at 21). Courts in the Second Circuit generally explain the scope of a plaintiff's duty to preserve as follows:

> "While a litigant is under no duty to keep or retain every document in [his] possession . . . [he] is under a duty to preserve what [he] knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."

*Galgano v. Cnty. of Putnam*, No. 16-cv-3572, 2022 WL 4547446, at *3, 2022 U.S. Dist. LEXIS 177991, at *12 (S.D.N.Y. Sept. 29, 2022) (alteration in original) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)). Dwyer stated that she used the sticky notes and pieces of paper at issue to record "hash" marks and numbers as she was counting and before entering them into a spreadsheet on a laptop. (Dkt. No. 164-7, ¶ 4). Under these circumstances, the Court is doubtful that the duty to preserve would extend to what were essentially tools used in tallying quantities for entry into a spreadsheet. Nevertheless, assuming they should have been preserved, the Court considers the remaining spoliation elements.

### 2. Culpability

Although the Court finds Dwyer's discarding of the inventory notes intentional, she stated that she only discarded them after "the numbers were read off and fully incorporated into to the spreadsheet," (Dkt. No. 164-7, ¶ 4), thus ensuring that the numbers were preserved in some form before discarding the original notes. Further, there is nothing in the record to suggest

that Dwyer acted in bad faith, with a willful purpose, or with other than possibly ordinary negligence in discarding the papers. *See Siani v. State Univ. of New York at Farmingdale*, No. 09-cv-407, 2010 WL 3170664, at *8, 2010 U.S. Dist. LEXIS 82562, at *26 (E.D.N.Y. Aug. 10, 2010) (finding ordinary negligence where, despite litigation hold, "some logs and documents were deleted, albeit in the context of routine clean-up procedures, and routine file destruction procedures were not suspended").

### 3. Relevance

The Parker Defendants argue that "relevance is easily satisfied" because "the quantity and nature of seized property goes to the heart of the Parker Defendants' conversion and trespass-to-chattels counterclaims," and to the amount of their claims for damages. (Dkt. No. 164-11, at 24). The Nation disputes the relevance of "sticky notes" and "scrap papers" and points out that it provided a "detailed Excel spreadsheet" containing the inventory information. (Dkt. No. 192, at 23). The Nation further notes that its IT vendor provided the Parker Defendants "with a complete forensic imaging of all computers and electronic devices located" in Bayard Street Pipekeepers at the time the Nation "took possession." (*Id.* at 23 n.4).

"Although the burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, when the culpable party was negligent, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party." *Hill v. Griffin*, No. 6:10-cv-06419, 2018 WL 5023782, at *3, 2018 U.S. Dist. LEXIS 178654, at *9 (W.D.N.Y. Oct. 17, 2018) (quoting *Adorno v. Port Auth. of N. Y. & N.J.*, 258 F.R.D. 217, 229 (S.D.N.Y. 2009)). The Parker Defendants argue that "[w]ithout contemporaneous records, Defendants must rely on testimony years after the fact and on Plaintiff's self-serving, incomplete spreadsheet." (Dkt. No. 164-11, at 25). However, the Parker Defendants have not attached the spreadsheet to their motion or

identified how it is incomplete or inaccurate. Further, while the burden on the moving party must not be onerous, the Court observes that because Parker and Weber testified to operating and managing the Bayard Street Pipekeepers, and because Parker himself testified to ordering the inventory and stocking the store, (Dkt. No. 164-5, at 49–50, 95–96; Dkt. No. 164-6, at 48–49), they, presumably, possess the personal knowledge necessary to challenge the accuracy of the spreadsheets, and thus demonstrate that the handwritten counts were unfavorable to the Nation, but make no such arguments. *See Caltenco v. G.H. Food, Inc.*, No. 16-cv-1705, 2018 WL 1788147, at *7, 2018 U.S. Dist. LEXIS 226509, at *20–21 (E.D.N.Y. Mar. 7, 2018) (declining to impose sanctions where the "[d]efendants acted at most negligently by failing to preserve the documents requested" and the plaintiff failed to "offer[]sufficient extrinsic evidence for the Court to conclude that the original notebook pages are 'reasonably likely' to contain information that would support [the] Plaintiff's theory" of fabrication); *see Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 179 (E.D.N.Y. 2009) (declining to impose sanctions even though duty to preserve emails had been "unquestionably" breached where movant "failed to demonstrate that any destroyed emails would have been favorable to her position"). Accordingly, the Court concludes that the Parker Defendants have failed to show relevance and therefore declines to impose an adverse inference instruction or other sanctions.

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Nation's motion for spoliation sanctions (Dkt. No. 163) is **GRANTED** pending further briefing. The Nation is directed to address spoliation sanctions in its trial memorandum, due November 18, 2025. The Parker Defendants shall file a response by November 25, 2025. And it is further

**ORDERED** that the Parker Defendants' motion for spoliation sanctions (Dkt. No. 164) is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 6, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge