UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CAYUGA NATION, by and through its lawful governing body, the CAYUGA NATION COUNCIL,

                Plaintiffs,

v.

DUSTIN PARKER, NORA WEBER, PAUL MEYER, JUSTICE FOR NATIVE FIRST PEOPLE, LLC, and C.B. BROOKS LLC,

                Defendants.

5:22-cv-00128 (BKS/TWD)

---

**Appearances:**

*For Plaintiff*:
Michael E. Nicholson
David G. Burch, Jr.
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202

*For Defendants Dustin Parker and Nora Weber:*
Daniel J. Hurteau
Kasey Kaspar Hildonen
Robert McManigal
Nixon Peabody LLP
677 Broadway, 10th Floor
Albany, New York 12207

*For Defendants Paul Meyer, Justice for Native First People, LLC, and C.B. Brooks, LLC:*
Joseph A. Camardo
Camardo Law Firm, PC
127 Genesee Street
Auburn, New York 13021

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff Cayuga Nation, by and through its governing body, the Cayuga Nation Council, claims that Defendants Dustin Parker and Nora Weber (the "Parker Defendants") and Defendants Paul Meyer, Justice for Native First People, LLC, and C.B. Brooks, LLC (the "Meyer Defendants"), have used or invested racketeering income in an enterprise, in violation of the Racketeer Income and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a). (*See generally* Dkt. No. 1). The Nation alleges that Defendants illegally sold untaxed tobacco and cannabis products at a smokeshop on the Cayuga Reservation and used the profits (racketeering proceeds) to open a second smokeshop on the Reservation, causing injury to the Nation's own tobacco and cannabis businesses. At the summary judgment stage, the Court noted that although New York has legalized the sale of cannabis, the federal Controlled Substances Act ("CSA") still classifies marijuana as a schedule I substance and prohibits its sale, (Dkt. No. 226, at 10 (citing 21 U.S.C. §§ 802(6), 812(c)(10), 841(a))), and that in *Shulman v. Kaplan*, 58 F.4th 404 (2d Cir. 2023), the Ninth Circuit had found that RICO's "business or property" civil remedies provision, 18 U.S.C. § 1964(c), did not encompass a property interest in cannabis and that "[b]ecause RICO's definition of racketeering activity necessarily encompasses dealing in cannabis, it would be inconsistent to allow a business that is actively engaged in . . . commerce in cannabis to recover damages under RICO for injury to that business," (*id.* at 10–11 (quoting *Shulman*, 58 F.4th at 411)). The Court therefore directed further briefing as to whether lost profits for cannabis sales were recoverable under RICO. (*Id.* at 11). Briefing is complete. (Dkt. Nos. 241, 246, 247, 250, 256, 271). For the reasons that follow, the Court finds that lost profits for cannabis sales are not recoverable under RICO.

## II.     BACKGROUND

The facts and history of this case are set forth at length in this Court's November 3, 2025 Order denying Defendants' motions for summary judgment and judgment on the pleadings. (Dkt. No. 226). The Court assumes familiarity with these facts and does not summarize them here.

## III.    DISCUSSION

The Nation argues that *Shulman's* "purpose-based approach" to defining "business or property" was cast into doubt by the Supreme Court's subsequent decision in *Medical Marijuana v. Horn*, 604 U.S. 593, 601 (2025), and that a cannabis business easily falls within the Supreme Court's "broad interpretation of the phrase 'business or property.'" (Dkt. No. 241, at 35). Defendants argue that the illegality of cannabis under the CSA, despite its lawfulness under state law, "forecloses the Nation's claimed lost profits" for "cannabis activity." (Dkt. No. 256, at 12; Dkt. No. 246, at 7–8). The Court agrees.

RICO's civil remedies provision allows "[a]ny person *injured in his business or property* by reason of a violation of section 1962 . . . [to] sue." 18 U.S.C. § 1964(c). In *Medical Marijuana*, which arose out of the Second Circuit, the Supreme Court explained that the meaning of RICO's civil remedies provision was "straightforward: A plaintiff has been 'injured in his business or property' if his business or property has been harmed or damaged. Section 1964(c) requires nothing more." 604 U.S. at 6001 (quoting 18 U.S.C. § 1964(c)). Although the Supreme Court acknowledged that "'injury' can mean 'invasion of a legal right'" it declined to so restrict the definition and instead applied the "ordinary meaning," concluding "the most natural interpretation of the text" is "that 'injured' means 'harmed.'" *Id.* at 602, 612. Thus, if "injured" may be defined simply as "harmed," without reference to whether a "legal right" (in tort or otherwise) was violated, the allegation that Defendants' second smokeshop caused the Nation's businesses to lose profits, even if derived from cannabis sales, falls within definition of "injured"

under RICO. However, the Court must still consider whether the Nation's cannabis business is a "business" for purposes of RICO's civil remedies provision. Because the Supreme Court's focus in *Medical Marijuana*, was on the meaning of "injured," and it emphasized that the question of the Second Circuit's interpretation of "business" was not before it, *id.* at 600, the Court looks to the Second Circuit's underlying decision in *Horn v. Medical Marijuana, Inc.*, 80 F.4th 130 (2d Cir. 2023), which remains binding precedent, for guidance.

In *Horn*, the Second Circuit gave "business" and "property" their "independent and ordinary significance." *Id.* at 136 (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338–39 (1979)). Citing Black's Law Dictionary 248 (Rev. 4th ed. 1968), the Circuit explained that "[a]t the time of § 1964(c)'s codification, the term 'business' did not 'embrace' a single 'legal meaning,'" and instead "embraced concepts like 'employment, occupation, or profession engaged in for gain or livelihood,' and 'commercial or industrial establishment or enterprise.'" *Id.* at 136 (quoting Black's Law Dictionary 248 (Rev. 4th ed. 1968)); *see also id.* (noting that "[n]on-legal dictionaries of the time reflect similar understandings" (citing Webster's Third New International Dictionary 302 (1971))). The Circuit therefore concluded the plaintiff's allegation that he was terminated from his employment was "sufficient to state a 'business' injury under the RICO statute." *Id.* It explained this conclusion was not only consistent with the Supreme Court's instruction that "RICO is to be read broadly," but with "Congress' [use of] self-consciously expansive language and overall approach" and "express admonition that RICO is to be liberally construed to effectuate its remedial purposes." *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98 (1985)).

Applying the broad and ordinary meanings of "injured" and "business," without considering whether "invasion of a legal right" has been alleged, the Court has no difficulty

4

concluding that the Nation's allegation that Defendants' smokeshop caused the Nation's cannabis businesses to lose profits is sufficient to allege it was "injured" in its "business" under RICO. But even assuming these straightforward definitions enable the Court to side-step the question of whether Congress intended "business or property" to cover cannabis-related commerce, there is still the question of remedy.

      Here, the Nation cites no case law that would suggest a federal court could order—or ask a federal jury to consider—damages for the loss of what are illegal proceeds under the CSA, the payment of which would, in all likelihood, come from the proceeds of illegal marijuana sales. *See United States v. Canori*, 737 F.3d 181, 184 (2d Cir. 2013) ("Marijuana remains illegal under federal law, even in those states in which medical marijuana has been legalized." (citing 21 U.S.C. § 903 (providing for preemption where "there is a positive conflict between [a provision of the CSA] and that State law such that the two cannot consistently stand together"))). In the context of contract law, courts within the Second Circuit, and around the country, have consistently found that even in states where cannabis is legal, when awarding damages would require an act that violates the CSA, such as awarding damages from a cannabis asset stream or proceeds, federal courts may not award such damages. *See also Kornea v. Miller*, No. 22-cv-04454, 2025 WL 2306962, at *4, 2025 U.S. Dist. LEXIS 154796, at *9–10 (S.D.N.Y. Aug. 11, 2025) (finding that because the contract "has as its object the sale and distribution of marijuana, acts which are illegal under federal law," "the Court cannot enforce its terms," explaining that "'[e]ven where conduct may be legal under state law and enforceable by a state court, federal courts sitting in diversity have held that contracts that violate the federal marijuana laws are not enforceable by a federal court'" (quoting *1240 S. Bannock, LLC v. Siem*, No. 2:21-cv-00183, 2022 WL 2161386, at *5, 2022 U.S. Dist. LEXIS 107018, at *13 (W.D. Mich. May 27, 2022),

5

*report and recommendation adopted*, 2022 WL 2158384, 2022 U.S. Dist. LEXIS 106959 (W.D. Mich. June 15, 2022))); *Ricatto v. M3 Innovations Unltd., Inc.*, No. 18-cv-8404, 2019 WL 6681558, at *5 n.4, 2019 U.S. Dist. LEXIS 210777, at *12 n.4 (S.D.N.Y. Dec. 6, 2019) ("Had the [contract] obligated Defendants to develop land for the cultivation of marijuana, enforcement of the contract might well put the Court in the position of directing Defendants to violate federal law . . . . If enforcement of the contract would require an illegal action, the contract would be unenforceable."); *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1260 (D. Colo. 2022) ("Relief may not be in a form that endorses violating the CSA. It can neither require an act that would violate the CSA nor award monetary damages paid from a marijuana asset or income stream."); *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 18-cv-01104, 2020 WL 1855190, at *12, 2020 U.S. Dist. LEXIS 64340, at *36–37 (D. Or. Apr. 13, 2020) (finding that the CSA precluded the court from awarding the plaintiff lost profits as damages for the breach of a contract to build a growhouse). The Court therefore concludes that awarding lost profits for cannabis sales as RICO damages would violate federal law.

      Finally, and perhaps this should have been the lead, the Court notes that the only viable basis for the Nation's cannabis-related lost profits claim is the fact of the legality of such a business under state law. As the CSA preempts any conflict with state law, 21 U.S.C. § 903 (providing for preemption where "there is a positive conflict between [a provision of the CSA] and that State law such that the two cannot consistently stand together")), and as the Court is obligated, if feasible, to regard both RICO and the CSA as effective, and because the Court cannot construe Plaintiff's cannabis-related RICO claim in a way that would not also violate the CSA, rendering it impliedly repealed, *see Traynor v. Turnage*, 485 U.S. 535, 547–48 (1988) (observing the "cardinal rule . . . that repeals by implication are not favored,'" and that "courts

are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"), the Court finds the Nation is not entitled to recover lost profits in connection with the sale of cannabis products and all evidence related to the Nation's alleged lost profits for the sale of cannabis products will be precluded at trial.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that evidence that the Nation lost profits in connection with the sale of cannabis products is precluded as irrelevant.

**IT IS SO ORDERED.**

Dated:  December 1, 2025
        Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge