**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CAYUGA NATION, by and through its lawful governing body, the CAYUGA NATION COUNCIL,

Plaintiff,

5:22-cv-00128 (BKS/TWD)

v.

DUSTIN PARKER, NORA WEBER, PAUL MEYER, JUSTICE FOR NATIVE FIRST PEOPLE, LLC, and C.B. BROOKS LLC,

Defendants.

---

**Appearances:**

*For Plaintiff:*
Michael E. Nicholson
David G. Burch, Jr.
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202

*For Defendants Dustin Parker and Nora Weber:*
Daniel J. Hurteau
Kasey Kaspar Hildonen
Nixon Peabody LLP
677 Broadway, 10th Floor
Albany, New York 12207

*Defendant Paul Meyer, Pro se:*
Paul Meyer
Auburn, New York 13021

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Cayuga Nation, by and through its governing body, the Cayuga Nation Council, (the "Nation"), filed this action against Defendants Dustin Parker and Nora Weber (the "Parker Defendants"), and Paul Meyer, Justice for Native First People, LLC, and C.B. Brooks, LLC (the "Meyer Defendants"), alleging that Defendants used or invested racketeering income in the establishment or operation of an enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a). (*See generally* Dkt. No. 1). The Parker Defendants filed a recoupment counterclaim against the Nation alleging conversion. (Dkt. No. 60). After a four-day trial in December 2025, the jury returned a verdict finding by a preponderance of the evidence: that the Nation proved its RICO investment injury claim against the Parker Defendants and awarded $75,619 in damages; that the Nation failed to prove its RICO investment injury claim as to the Meyer Defendants; and that the Parker Defendants had proved their conversion claim against the Nation in the amount of $298,000. (Dkt. No. 310 (Verdict Sheet)). Presently before the Court are: (1) the Parker Defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or alternatively for remittitur pursuant to Rule 59, and for post-verdict relief with respect to the cannabis-related claims in this case and this Court's finding that spoliation sanctions were warranted, (Dkt. Nos. 324, 325)[1]; (2) the Nation's motion to alter or amend the judgment pursuant to Rule 59(e), (Dkt. No. 323); and (3) the parties' motions for an award of attorneys' fees and/or costs, (Dkt. Nos. 319, 326, 327). The motions have been fully briefed. (Dkt. Nos. 330, 331, 332, 333, 334, 335, 338, 339, 340).

[1] The Clerk is respectfully directed to terminate Dkt. No. 324 as it was amended by Dkt. No. 325.

For the reasons that follow, the Parker Defendants' motion pursuant to Rules 50(b) and 59 is denied, the Nation's motion pursuant to Rule 59(e) is denied in part and granted in part, the Nation's motion for attorneys' fees and costs is granted, Defendant Meyer's motion for attorneys' fees is denied, and the Parker Defendants' motion for attorneys' fees is denied but their motion for costs is granted.

## II. BACKGROUND

The following is a brief recitation of the facts giving rise to this case. In September 2021, Defendant Parker, a member of the Cayuga Nation, opened a convenience store and gas station named "Pipekeepers" on the Cayuga Nation Reservation, in Seneca Falls, New York, where he and Defendant Weber sold, among other things, Native brand, tax-free cigarettes and tobacco products. (Trial Transcript ("T."), at 149, 267, 271, 316). Prior to Pipekeepers, the Nation's Lakeside Trading store was the only major retailer that sold native-made, tax-free cigarettes on the Reservation. (T. 148, 152). On January 1, 2022, after buying the Seneca Falls property, the Nation, with the help of a "militant force," took possession of Pipekeepers including its gas, inventory, computers, and any cash on the premises. (T. 150, 322–23). The Nation later re-opened the Seneca Falls property as a Lakeside Trading store. (T. 151–52). In February 2022, Defendant Parker opened a new Pipekeepers on the Reservation in Montezuma, New York, where it again sold Native brand, tax-free cigarettes and tobacco products. (T. 331, 336–37, 348, 350). On February 10, 2022, the Nation filed the present action. (Dkt. No. 1).

The Court otherwise assumes familiarity with the procedural and factual background of this extensively-litigated case, as detailed in its prior decisions. *See*, *e.g.*, *Cayuga Nation v. Parker*, No. 22-cv-00128, 2022 WL 23028186, 2022 U.S. Dist. LEXIS 257581 (N.D.N.Y. Feb. 11, 2022); *Cayuga Nation v. Parker*, 605 F. Supp. 3d 414 (N.D.N.Y. 2022); *Cayuga Nation v. Parker*, No. 22-cv-00128, 2022 WL 3347327, 2022 U.S. Dist. LEXIS 144120 (N.D.N.Y. Aug.

12, 2022); *Cayuga Nation v. Parker*, No. 22-cv-128, 2023 WL 130852, 2023 U.S. Dist. LEXIS 3066 (N.D.N.Y. Jan. 9, 2023); *Cayuga Nation v. Parker*, No. 22-cv-00128, 2025 WL 3062909, 2025 U.S. Dist. LEXIS 215709 (N.D.N.Y. Nov. 3, 2025); *Cayuga Nation v. Parker*, No. 22-cv-00128, 2025 WL 3101417, 2025 U.S. Dist. LEXIS 218665 (N.D.N.Y. Nov. 6, 2025); *Cayuga Nation v. Parker*, No. 22-cv-00128, 2025 WL 3204503, 2025 U.S. Dist. LEXIS 225184 (N.D.N.Y. Nov. 17, 2025); *Cayuga Nation v. Parker*, No. 22-cv-00128 (BKS/TWD), 2025 WL 3440494, 2025 U.S. Dist. LEXIS 233560 (N.D.N.Y. Dec. 1, 2025); *Cayuga Nation v. Parker*, No. 22-cv-00128, 2025 WL 3493127, 2025 U.S. Dist. LEXIS 251126 (N.D.N.Y. Dec. 5, 2025).

## III. THE PARKER DEFENDANTS' POST-TRIAL MOTION

### A. Motion for Judgment as a Matter of Law

#### 1. Standard of Review

Under Rule 50, a district court may grant a motion for judgment as a matter of law only "'if 'the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it.'" *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 41 (2d Cir. 2025) (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)); *see Lee v. City of Troy*, 339 F.R.D. 346, 360 (N.D.N.Y. 2021) (explaining that Rule 50 "allows a district court to enter judgment as a matter of law if a jury returns a verdict unsupported by legally sufficient evidence").

"A party has two opportunities to seek judgment as a matter of law during trial." *Edelman*, 141 F.4th at 41. Once a party "has been fully heard on an issue," Rule 50(a) allows a party to move for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a). If the court does not grant a motion made under Rule 50(a), "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion" upon its renewal after trial. Fed. R. Civ. P. 50(b). "In

ruling on the renewed motion, the court may:[] (1) allow judgment on the verdict, if the jury returned a verdict;[] (2) order a new trial; or[] (3) direct the entry of judgment as a matter of law." *Id.*

A Rule 50(b) motion may be granted only "if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (alterations in original) (quoting *Brady*, 531 F.3d at 133). "In assessing the sufficiency of evidence to support a jury verdict, [a district court] must view the record in the light most favorable to the [nonmoving] party, assuming all reasonable inferences were drawn and all credibility disputes resolved in its favor." *Advance Pharm., Inc. v.39 United States*, 391 F.3d 377, 390 (2d Cir. 2004). "[A] jury may use a combination of factors—direct testimony, cross examination, and circumstantial evidence—to infer that a particular defendant took a particular action." *Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 621 (D. Conn. 2016), *as amended* (Aug. 9, 2016). "[C]ircumstantial evidence is of equal value to direct evidence[.]" *McFadden v. Cnty. of Monroe*, 672 F. App'x 81, 85 (2d Cir. 2016).

The district court "may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998); *see also Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005) (observing that, on a motion for judgment as a matter of law, the court "cannot weigh conflicting evidence, determine the credibility of witnesses, or substitute [its] judgment for that of the jury"). Although the court "should review the record as a whole," it should "give credence to the evidence favoring the

nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) (quotation marks omitted).

**2. Analysis**

**a. Injury to the Nation's Cigarette Business**

The Parker Defendants urge the Court to apply the law-of-the-case doctrine and find, as it did regarding alleged damages to the Nation's cannabis business, that any damages to the Nation's cigarette business "fail as a matter of law because they are predicated on a property interest comprised of contraband cigarette inventory and revenues derived from federally prohibited trafficking under the Contraband Cigarette Trafficking Act ('CCTA')," 18 U.S.C. § 2341 *et seq.* (Dkt. No. 325-1, at 8–9). The Nation responds that the law of the case doctrine does not apply because unlike cannabis, "federal law does not expressly ban the Nation's tobacco sales." (Dkt. No. 330, at 8). The Court agrees.

Under the law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 n.6 (2d Cir. 2024) (quoting *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999)). "The law of the case doctrine stands for the simple proposition that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Republic of Turkey v. Christie's Inc.*, 527 F. Supp. 3d 518, 522 (S.D.N.Y. 2021) (Nathan, J.) (quoting *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)). However, "[t]he doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). "[Q]uestions that have not been decided do not become law of the case merely because they could have been decided." *Bonnie & Co. Fashions,*

*Inc. v. Bankers Trust Co.*, 955 F. Supp. 203, 209 (S.D.N.Y. 1997) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Fed. Prac. & Proc. § 4478 at 789 (1981)).

This Court previously found that even though cannabis remained illegal under federal law, reading RICO broadly, as it is required to do, the Nation's allegation that the Parker Defendants' cannabis business caused the Nation's cannabis business to lose profits, was sufficient to allege that the Nation was "injured" in its "business" under RICO. *Cayuga Nation v. Parker*, No. 22-cv-00128, 2025 WL 3440494, at *2, 2025 U.S. Dist. LEXIS 233560, at *5–6 (N.D.N.Y. Dec. 1, 2025). However, it precluded the parties from introducing evidence related to the alleged damage to the Nation's cannabis business on the ground that an award of damages to restore the losses for harm caused to the Nation's sales and distribution of cannabis would violate the Controlled Substances Act, 21 U.S.C. § 801 *et seq. Id.*; *see also*, *e.g.*, *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 18-cv-01104, 2020 WL 1855190, at *12, 2020 U.S. Dist. LEXIS 64340, at *37–38 (D. Or. Apr. 13, 2020) (finding that the CSA precluded the court from awarding the plaintiff lost profits as damages for the breach of a contract to build a growhouse).

Here, the Parker Defendants argue that the "same logic" underlying Court's determination regarding Nation's cannabis business applies to the Nation's cigarette business, and should result in the preclusion of damages for lost profits to that business. (Dkt. No. 325-1, at 8–9). However, the question of whether the Nation's cigarette business violates the CCTA concerns an entirely different statute. Further, unlike the sale of cannabis, which is indisputably illegal under federal law, the sale of cigarettes, while heavily regulated, is not wholly proscribed by federal law, unless they are contraband cigarettes as defined by the CCTA—a determination that requires reference to state law. *See*, *e.g.*, 18 U.S.C. § 2341(2) (defining "contraband

cigarettes" as "cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes"); *see also Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 160–61 (2d Cir. 2011) (outlining New York Tax Law's tax stamp requirements, and provisions enacted "[t]o account for tribal tax immunity," including an "Indian tax exemption approval system" and a "prior approval system" through which "tribes and reservation retailers may obtain tax-free cigarettes" (citing N.Y. Tax Law § 471(1)). Because "[t]he law of the case comes into play only with respect to issues previously determined," *Quern*, 440 U.S. at 347 n.18, and because this Court has never determined whether the Nation's cigarette business violated federal (or state law), this Court's decision regarding cannabis and the CSA cannot serve as a basis for a law of the case argument concerning cigarettes, the CCTA, and New York State Tax Law.

The Parker Defendants have cited no legal authority, nor is the Court aware of any, that would provide a basis for concluding that a federal court may not award damages under RICO for harm to the Nation's cigarette business under the circumstances of this case. It may be, as the Parker Defendants contend, that the Nation's sale of cigarettes do not comply with New York Tax Law and thus constitute contraband cigarettes, in violation of the CCTA. On the other hand, there was evidence presented at trial that New York has approached tribal cigarette sales in ways not expressly contemplated by the prior approval and coupon provisions in the New York Tax Law. For example, B.J. Radford, who has worked in Native American retail operations, including cigarette sales, for thirty years testified that the Oneida Nation has a "tax parity agreement with New York State" and charges an "Oneida Nation tax that is comparable to New

York State taxes." (T. 145). Radford further explained that the Cayuga Nation, which manufactures many of the cigarette sales it sells, possesses a federal "TTB issued license," which regulates [the Nation's cigarette] manufacturing process and collects the federal excise tax from the manufacture [sic]." (T. 146). Thus, as there has been no finding by a jury or otherwise that the Nation's cigarette business violates New York or federal law, and absent legal authority to the contrary, the Court declines to disturb the jury's finding that the Parker Defendants caused injury to the Nation's cigarette business.

**b. Expert Testimony**

The Parker Defendants argue that the methodology employed by James Flynn, who opined regarding the amount of damages Pipekeepers caused to the Nation's business was unreliable and must be rejected, and that without "the flawed one-for-one premise and aggregation/averaging techniques, no reasonable jury could find a directly caused 18 U.S.C. § 1962(a) investment/use injury. (Dkt. No. 325-1, at 10–12). The Nation responds that the Parker Defendants have waived any argument regarding Flynn or damages because they failed to raise this argument in their Rule 50(a) motion. (Dkt. No. 330, at 17).

"To meet the specificity requirements of Rule 50(a), a directed verdict motion 'shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.'" *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 113 (2d Cir. 1996) (quoting Fed. R. Civ. P. 50(a)(2)). "[T]he specificity requirement is obligatory." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir. 1993). Because a motion pursuant to Rule 50(b) "is in reality a renewal of a motion" pursuant to Rule 50(a), *id.* at 53–54 (citation omitted), the grounds on which a party may rely in a Rule 50(b) motion are "limited to those grounds that were 'specifically raised in the prior [Rule 50(a) motion],'" *Galdieri–Ambrosini*, 136 F.3d at 286 (internal quotation marks omitted) (quoting *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997)); *see also Exxon*

*Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."). "[T]he movant is not permitted to add new grounds after trial" in a Rule 50(b) motion. *Galdieri–Ambrosini*, 136 F.3d at 286.

In the Rule 50(a) motion the Parker Defendants made during trial, they argued that the Nation failed to show that there "was an investment that was made from the Bayard Street property into a continuing or an expanding enterprise," (T. 466), that Meyer was "involved in anything other than normal business transactions," (T. 467), that Weber was an employee and "shouldn't even be in this lawsuit," (T. 469), that the legality of the Nation's selling of unstamped cigarettes was "very suspect", (T. 479–80 ("Under RICO an illegal organization cannot sue another illegal organization to claim that they're hurting their business, that they're taking profits from.")), and that the Nation failed to prove money laundering," (T. 481, 485–87). At no point did the Parker Defendants mention damages or challenge the Nation's expert testimony or the issue of damages in their Rule 50(a) motion. Accordingly, insofar as the Parker Defendants challenge Flynn's testimony in their Rule 50(b) motion, because the Parker Defendants failed to preserve this issue for review in their Rule 50(b) motion, the Court declines to consider it. *See Playtex Prods., Inc. v. Procter & Gamble Co.*, No. 02-cv-8046, 2004 WL 1658377, at *3, 2004 U.S. Dist. LEXIS 14084, at *10 (S.D.N.Y. July 26, 2004) (declining to consider the defendant's Rule 50(b) arguments regarding "studies' sample size or the powering of testing" on the ground that the defendant's Rule 50(a) motion "was directed solely to the external validity of the tests, not sample size" or "powering of testing"), *aff'd*, 126 F. App'x 32 (2d Cir. 2005); *Williams v. Marinelli*, No. 13-cv-1154, 2017 WL 11473740, at *22, 2017 U.S. Dist. LEXIS 21710, at *75 (D. Conn. Feb. 8, 2017) ("Where defendants' Rule 50(a) motion for

[judgment as a matter of law] d[oes] not challenge the sufficiency of [the plaintiff's] evidence with respect to punitive damages that issue is waived and cannot be raised in the defendants' renewed Rule 50(b) motion.") (internal quotation marks omitted).

In any event, the Court cannot say that the Parker Defendants have "identified a complete absence of evidence supporting the verdict, such that the jury must have based its verdict on 'sheer surmise and conjecture,' or shown that 'the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Rowe v. Google LLC*, No. 19-cv-8655, 2026 WL 915224, at *9, 2026 U.S. Dist. LEXIS 73890, at *29 (S.D.N.Y. Apr. 3, 2026) (quoting *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112 (2d Cir. 2015)). There was ample evidence at trial from which the jury could have found evidence that the Montezuma Pipekeepers' sale of tax-free cigarettes negatively impacted Lakeside Trading's sales. Radford testified that the Nation's two Lakeside Trading stores and the Montezuma Pipekeepers offered comparable pricing on cigarettes, (T. 165), were the only "major" retailers on the Reservation that sold tax-free cigarettes, that the Montezuma Pipekeepers was situated within five or six miles of both Lakeside Trading stores, (T. 152), that there was no major Native brand retailer within a 50-mile radius, (T, 155–56, 210), that the Nation's sales fell 20 to 25 percent or "about $3 million a year" in the years after the Pipekeepers stores opened, (T. 166), and that the Montezuma Pipekeepers made hundreds of thousands of dollars in profits from cigarette sales. (T. 296, 304–09, 311). In addition, the jury had exhibits showing the Parker Defendants' sales records, including the type and number of products sold, and the gross profit. (*See*, *e.g.*, Pltf's Exh. 3 ("P-3")). Thus, even setting aside Flynn's opinion that the Nation's total damages were $3,150,807, (T. 450), which the jury obviously rejected, the jury had more than enough evidence on which to find that the Parker Defendants caused the

Nation $75,619 in damages. Accordingly, the Parker Defendants' motion regarding the Nation's expert is denied.

### c. Evidence Tying Investment to Injury and Damages

The Parker Defendants argue that "the Nation offered no reliable allocation tying any distinct investment by each defendant to any distinct components of alleged injury." (Dkt. No. 325-1, at 12). Specifically, the Parker Defendants assert that "the Nation's failure to differentiate among defendants or to identify which investments were allegedly funded by racketeering proceeds force[d] the jury to engage in impermissible speculation." (*Id.* at 13). The Parker Defendants further argue[2] that the Nation failed to adduce evidence of "a direct, non-speculative link between the alleged racketeering injury and the claimed injury." (*Id.* at 14). The Nation responds that because the Parker Defendants failed to make these arguments in their Rule 50(a) motion, they are "precluded from asserting any such arguments under Rule 50(b)" and that their argument fails on the merits in any event. (Dkt. No. 330, at 20–23).

In their Rule 50(a) motion, the Parker Defendants argued that the Nation failed to adduce evidence that there "was an investment made from the Bayard Street property into a continuing or an expanding enterprise." (T. 466). While somewhat general, the Court finds this argument sufficient to preserve the issue.

Subsection (a) of § 1962 makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the establishment or operation of," any commerce-affecting enterprise. 18 U.S.C. § 1962(a); *see Ideal Steel Supply*

[2] The Parker Defendants present these arguments in two separate sections. (*See* Dkt. No. 325-1, at 12–14). For convenience, the Court addresses these arguments together.

*Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011) ("After there have been sufficient predicate acts to constitute such a pattern, what is forbidden by subsection (a) is the investment or use of the proceeds of that activity to establish or operate a commerce-affecting enterprise."). "Thus, the plaintiff asserting a civil RICO claim based on a violation of subsection (a) must show injury caused not by the pattern of racketeering activity itself, but rather by the use or investment of the proceeds of that activity." *Ideal Steel*, 652 F.3d at 321 (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir. 1990)).

At trial, the Nation presented evidence that the Parker Defendants sold hundreds of thousands of unstamped cigarettes at the Bayard Street Pipekeepers from Labor Day 2021 to December 29, 2021. (T. 271, 273–274, 286; *see also* P-73 (September 2021 product order reflecting more than 1,000 cartons of Native-brand cigarettes); P-74 (October 2021 product order reflecting 6,000 cartons of Native-brand cigarettes)).[3] Parker testified that he used the money from the Bayard Street Pipekeepers to stock the new Montezuma Pipekeepers, which is located on the Nation Reservation, and which also sold hundreds of thousands of dollars-worth of Native-brand unstamped cigarettes and tobacco. (T. 295, 297–98, 308–09, 311). From this evidence the jury could find that the Parker Defendants received income from a pattern of racketeering activity at the Bayard Street Pipekeepers, namely, the sale of contraband cigarettes in violation of the CCTA, and that the Parker Defendants used that income to stock, or invest in, the establishment of the Montezuma Pipekeepers, where they also engaged in contraband cigarette sales. Further, the Nation presented evidence that during the operation of the Montezuma Pipekeepers, which was located five to six miles from the Nation's Lakeside Trading businesses, and which was the only entity other than the Lakeside Training stores to sell

[3] There are 200 cigarettes per carton. (T. 274).

unstamped (tax-free) cigarettes on the Reservation, the Nation's Lakeside Trading businesses suffered a twenty, to twenty-five percent reduction in sales. (T. 155–56, 166, 210, 315). From this, the jury reasonably could conclude that the Parker Defendants' investment of proceeds from the Bayard Street Pipekeepers into the establishment and stocking of the Montezuma Pipekeepers injured the Nation's businesses. *See Ideal Steel*, 652 F.3d at 324 (finding that the defendants invested funds from the defendants' "Queens store's cash-no-tax scheme" to establish second retail location in the Bronx, "a mere eight minutes' drive from [the plaintiff's] facility," where the plaintiff had a "dominant market position," and proceeded to offer "an array of goods and services similar to those offered by" the plaintiff, and that "the opening of the defendant's Bronx store caused a substantial decrease in [the plaintiff's] sales, profits, and local market share").

The Parker Defendants argue that because the jury found the Meyer Defendants were not liable, any "association-in-fact" was comprised of the two Parker Defendants, which "underscor[es] the absence of a broader multi-actor structure, separable investments, or allocable 'use/investment' injuries traceable to anyone other than the Parkers themselves." (Dkt. No. 325-1, at 13). Even if, as the Parker Defendants argue, the enterprise and racketeering activity are limited, for liability purposes, to the Parker Defendants, and it was not a "broad[] multi-actor structure" the record nonetheless supports the jury's finding that the investment in the opening of the Montezuma Pipekeepers harmed Lakeside Trading's sales. As an initial matter, the Parker Defendants cite no case law suggesting that a small or limited enterprise would render the jury's liability finding unsupportable. Regarding proximate cause, the Court notes that the trial record supports the inference that the approximately $3 million in sales lost by Lakeside Trading (per year, including in 2022, when Montezuma Pipekeepers opened), was, at least in part, caused by

the Nation's only true competition on the Reservation, the Montezuma Pipekeepers. Radford testified that untaxed cigarettes at Native stores cost "$30 to $42 a carton" and that "$125 is the cheapest carton" available at non-Native stores. (T. 153). Thus, the jury could have found that the Montezuma Pipekeepers, located on the Reservation, approximately 6 miles from either Lakeside Trading store, was the Nation's primary competition and responsible for diverting sales.[4] (*See* T. 153 (Radford testifying that the only other cigarette sellers in the vicinity were non-Native stores, which "are really not our competition")). Further, the jury's relatively limited award of damages, $75,619, is *consistent* with even the Parker Defendants' view of the evidence: it appears to reflect the jury's finding that the investment injury caused was relatively limited. Accordingly, the Court concludes there was legally sufficient evidence presented at trial to support the jury's finding of proximate cause and direct harm.

**B. Motion for Remittitur**

**1. Standard of Review**

Under Rule 59 of the Federal Rules of Civil Procedure, a court may order "a new trial limited to damages" or, under the practice of remittitur, "condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *See Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d 442, 466 (S.D.N.Y. 2014) (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996)). "The Second Circuit has identified 'two distinct kinds of cases' in which conditional remittitur is appropriate: (i) when the court discerns 'an error that caused the jury to include in the verdict a quantifiable amount that should be stricken' or (ii) when the award is 'intrinsically excessive' in the sense that no reasonable jury could have awarded the amount, whether or not the excessiveness can be attributed to 'a particular, quantifiable error.'" *Id.* (quoting *Kirsch v.*

[4] According to the trial testimony, the closest Native store was approximately 50 miles from the Lakeside Trading stores. (T. 155–56, 511).

*Fleet St. Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998)). A jury's verdict should be set aside as "'intrinsically excessive' only if 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *Id.* (quoting *Kirsch*, 148 F.3d at 165).

In general, "on a Rule 59 motion the court 'may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner.'" *Id.* (quoting *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014)). However, in determining whether the jury awarded excessive damages, the court must "'view the evidence and draw all factual inferences in favor of [the verdict winner]' and . . . 'accord substantial deference to the jury's determination of factual issues.'" *Dancy v. McGinley*, 843 F.3d 93, 99 (2d Cir. 2016) (quoting *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993)).

### 2. Analysis

#### a. *In Pari Delicto* Doctrine

The Parker Defendants seek an order "remit[ting] the damages award to zero" under the *in pari delicto* doctrine on the ground that the Nation was engaged in the same conduct as the Parker Defendants: the sale of unstamped, tax free cigarettes. (Dkt. No. 325-1, at 15). The Nation responds that because it is "a sovereign that manufactures its own cigarettes," its conduct and Defendants' conduct are distinguishable and that there is no evidence that the Nation and the Parker Defendants were working together. (Dkt. No. 330, at 24).

"The doctrine of *in pari delicto*, a term meaning 'of equal fault,' reflects the principle that a plaintiff who has participated in wrongdoing equally with another person may not recover from that other person damages resulting from the wrongdoing." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 160 (2d Cir. 2014); *see also id.* at 167 (holding *in pari delicto* is applicable in a civil RICO action). Courts evaluate two factors in determining whether *in pari delicto* may bar a

private action for damages under RICO "on the grounds of the plaintiff's own culpability": (1) whether, "as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress"; and (2) whether "preclusion of suit would not significantly interfere with the effective enforcement of [RICO] and protection of the . . . public." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985); *see Republic of Iraq*, 768 F.3d at 162 (applying *Bateman Eichler* test to RICO action).

In support of their argument, the Parker Defendants note that the Second Circuit has affirmed the application of the doctrine *of in pari delicto* to bar RICO claims brought by a sovereign state. (Dkt. No. 325-1, at 18 (citing *Republic of Iraq*, 768 F.3d at 167)). *Republic of Iraq*, however, is inapposite. There, the Republic of Iraq brought a RICO claim against defendants who had allegedly conspired with Iraq's former government leaders and state enterprises to "corrupt and plunder" the United Nations' Oil-for-Food Programme. *Republic of Iraq*, 768 F.3d at 151–52. The Second Circuit found the doctrine of *in pari delicto* barred the Republic's claim because it was "apparent from the Complaint that the [prior] Regime's effort to subvert the Programme was the policy of the Iraqi government," *id.* at 165, which was "the instigator and dominant party" in the corruption of the Programme, *id.* at 167, and because those subversive actions were attributable as a matter of law to the Republic (notwithstanding the ouster of the prior regime and the establishment of a constitutional democracy), the Republic's "responsibility for the wrongs . . . was at least as great as that of any defendant." *Id.* As there is no evidence in this case that the Parker Defendants' actions are attributable to the Nation, the Court find the *Republic of Iraq* does not provide a basis for applying the *in pari delicto* doctrine here.

However, the Court acknowledges the Parker Defendants' argument is not wholly without merit: there are aspects of the *in pari delicto* doctrine that suggest its applicability in this case. As the Second Circuit has explained that "it is consistent with the purpose of RICO to recognize an *in pari delicto* defense in cases where, as a direct result of the plaintiff's 'affirmative wrongdoing,' the plaintiff bears 'at least substantially equal responsibility,'" "for the RICO violations of which it complains." 768 F.3d at 167–68 (internal citations omitted) (first quoting *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155 (11th Cir. 2006); and then quoting *Bateman Eichler*, 472 U.S. at 310). And here the Parker Defendants allege that the Nation was engaged in affirmative wrongdoing, *i.e.*, operating a RICO enterprise engaged in the violation of the CCTA, by selling unstamped, tax-free cigarettes, (Dkt. No. 325-1, at 15–16), the very "RICO violation of which [the Nation] complains." *Republic of Iraq*, 768 F.3d at 168. But the "*in pari delicto* doctrine does not depend upon the plaintiff's morality, [it] instead permits the 'defendant [to] escape liability' to the plaintiff based on the plaintiff's 'at least substantially equal responsibility *for the underlying illegality*.'" *Id.* (quoting *Pinter v. Dahl*, 486 U.S. 622, 635–36 (1988)); *see also*, *e.g.*, *Inge v. McClelland*, 725 F. App'x 634, 636, 639 (10th Cir. 2018) (affirming application of *in pari delicto doctrine* to dismiss RICO claim against pharmacist for unlawfully filling the plaintiffs' prescriptions for narcotic pills, where the plaintiffs had actively participated in alleged RICO violation by obtaining the narcotics through a scheme with nurse practitioner who wrote prescriptions in exchange for pills). In this case, there is no allegation or evidence that the Nation bears any responsibility or fault for the damage to its businesses or cigarette sales from the investment of racketeering proceeds in establishing the

Montezuma Pipekeepers—even if the cigarettes it sells do not appear to comply with New York Tax Law.[5]

Therefore, the Court denies the Parker Defendants' request for a finding that the *in pari delicto* doctrine bars recovery in this case. (Dkt. No. 325-1, at 18).

**b. Gatekeeping Errors**

The Parker Defendants contend that the "damages award must be remitted to zero because the only competent defense expert testimony concluded the Nation failed to prove any damages." (Dkt. No. 325-1, at 18–19). As the Parker Defendants advance no new arguments, their motion is denied for the same reasons the Court articulated in denying their Rule 50(b) motion regarding the expert witnesses and damages. (*See supra* Part III.A.2).

**c. Allocation Among Defendants and Investments**

The Parker Defendants assert the jury's damages award must be remitted to zero because the Nation failed "to articulate a lawful methodology to allocate § 1962(a) injuries among distinct alleged investments by different defendants." (Dkt. No. 325-1, at 19). In view of the Jury's finding of no liability as to the Meyer Defendants, finding of liability as to Parker and

[5] The Nation asserts that federal Indian law permits the Nation to operate its on-Reservation tobacco business without paying state tax and preempts New York Tax Law § 471. The Nation asserts that, apart from its small tax-free allotment, it is not selling "premium" brand cigarettes manufactured by the large cigarette manufacturing companies, which, it seems to acknowledge, are subject to New York Tax Law. (Dkt. No. 330, at 10); *see Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154 (2d Cir. 2011). The Nation contends, however, that its sale of "'Cayuga'-brand cigarettes" or other Native-brand cigarettes are not subject to New York Tax Law because the Nation, and "neighboring and affiliated Indian nations," themselves manufacture the cigarettes, and that even if they are, New York Tax Law is preempted by federal Indian law. The Nation argues that under the balancing test articulated in *California v. Cabazon Band of Indians*, 480 U.S. 202 (1987), it is evident that (1) it has a significant tribal interest in its on-reservation tobacco business because the Nation and other Indian nations are "generating value on the reservations" by manufacturing and selling cigarettes "on their own sovereign territory"; and (2) this interest "outweighs the State's interest in collecting tax." (Dkt. No. 330, at 10–11). Because, the Nation explains, the unstamped, tax-free cigarettes it manufactures and sells do not violate state tax law, it follows that they do not fall within the meaning of contraband cigarettes under the CCTA, either.

While the Nation's contentions may not be unreasonable, they are untested and unproven. Further, as they concern an ancillary issue, the Court makes no determination regarding the legality of the Nation's businesses.

Weber, and minimal award of damages, the Court finds no error or excessive award meriting remittitur.

**d. Proximate Cause**

The Parker Defendants argue that remittitur of the damages award to zero is required because the Nation failed to adduce competent, "non-speculative proof" that would support a finding that the Nation suffered a "direct, non-speculative injury by reason of investment/use" of racketeering proceeds. (Dkt. No. 325-1, at 19). The Court finds the Parker Defendants' argument to be without merit for the reasons stated *supra* Part III.A.2. The Court therefore denies the Parker Defendants' request for remittitur.

**e. Alternative Request for "Entry of Net Judgment" for the Parker Defendants**

In the alternative, the Parker Defendants request that the Court alter the Judgment and award the Nation $0 on its 18 U.S.C. § 1962(a) claim after offsetting the $75,619 damages award by the $298,000 conversion verdict, and specify that the Parker Defendants take nothing on their conversion counter claim beyond that set-off. (Dkt. No. 325-1, at 20). The Parker Defendants further assert that "[t]he Court must confirm that even if treble damages were applied, the recovery would still be zero where sovereign immunity limits the defendants to recoupment and set-off reduces the plaintiff's recovery to zero under 18 U.S.C. § 1964(c)."[6] (*Id.*). The Judgment speaks for itself. The Parker Defendants cite no legal authority in support of their assertions and the Court finds no basis for granting this request.

---

[6] Section 1964(c) allows an award of treble damages and attorney's fees for a RICO violation.

### C. Additional Requests for Post-Verdict Relief

#### 1. Cannabis-Based Damages

The Parker Defendants state that the Court "must confirm that judgment must categorically exclude cannabis damages and preserve the Parkers' legal position that cannabis-business injuries are not cognizable business or property under civil RICO." (Dkt. No. 325-1, at 20). The Court previously issued an Order excluding cannabis damages. (Dkt. No. 297). The Parker Defendants' request for confirmation of this Order is denied.

#### 2. Spoliation

In their motion, the Parker Defendants include a section titled "Spoliation: Sanction Scope, Limiting Principle, and Monetary-Only Relief," recount the Court's previous findings, (Dkt. No. 325-1, at 17), and assert that "[c]onsistent with proportionality and the Court's exclusion of cannabis damages from trial, the Parker Defendants maintain that no sanction is warranted, given the outcome, but if any sanction is warranted a nominal monetary [sic] would be sufficient." (Dkt. No. 325-1, at 21 (citing Dkt. Nos. 226, 297)). The Court addresses spoliation sanctions later in this decision. *See infra* Part VI. Accordingly, the Parker Defendants' request (to the extent it is a request) is denied.

Accordingly, the Parker Defendants' post-trial motion (Dkt. No. 325) is denied.

## IV. THE NATION'S MOTION TO ALTER OR AMEND THE JUDGMENT

The Nation moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment entered in this case: to reflect the jury's separate damages award ($75,619 as against Parker, $75,619 as against Weber, totaling $151,238); to apply mandatory trebling to the damages award; and to calculate any offset in the proper sequence. (Dkt. No. 323-1, at 5–6). The Parker Defendants oppose any alteration of the judgment, arguing the Nation waived any "object[ion] to the Court's interpretation of the verdict" while the jury was still

empaneled; that the Nation has consistently sought joint and several liability; and that there is no clear error or manifest injustice requiring alteration of the judgment. (Dkt. No. 331, at 5–6).

### A. Verdict Proceedings and Judgment

The jury returned a verdict in the Nation's favor as to both Parker Defendants, but found that the Nation failed to prove liability as to the Meyer Defendants. (Dkt. No. 310, at 2). In response to the question: "What amount, if any, do you award as damages in connection with Plaintiff's 18 U.S.C. § 1962(a) RICO investment injury claim?" the jury wrote $75,619 on the line next to Dustin Parker's name and $75,619 on the line next to Nora Weber's name. (*Id.*). The jury further found that the Parker Defendants had proven their conversion claim against the Nation and awarded $298,000. (*Id.* at 3). After accepting the jury's verdict, the Court asked the jury to return to the jury room, explaining: "I'm going to talk to the parties and then I'll ask you to come back out, so you're not quite excused." (T. 697). The Court then engaged in the following colloquy with counsel:

> THE COURT: I want to confirm with counsel, it's my understanding that because there is joint and several liability, this is a damages award of a total award of $75,619. Do all counsel agree?
>
> MR. HURTEAU: The only thing I'll say, your Honor, is it's kind of moot because the setoff is more than the full amount, either way you look at it, whether it's 75 plus 75 or just 75, so I don't know that it makes a difference. But so I don't know what they meant by doing 75 and 75, but it's joint and several liability, so I would agree with you.
>
> THE COURT: Plaintiff's counsel?
>
> MR. BURCH: Your Honor, I mean, that is how we pled, joint and several liability, and it is a confusing arithmetic that was done here. I don't know if your Honor's willing to ask the jury for clarification on what they intended there, but certainly we pled joint and several liability.
>
> THE COURT: So given this verdict, you would agree that the total damages awarded to the plaintiff would be $75,619?
>
> MR. BURCH: Yes, your Honor.

> THE COURT: I think that's the question I just wanted to shore up, so I'm ready for the jury.

(T. 697–98). The jury was dismissed, (T. 698–99), and the Court issued the Judgment, which stated, in relevant part:

> IT IS FURTHER ORDERED AND ADJUDGED that the jury returned a verdict in favor of the Plaintiff as to Defendants Dustin Parker and Nora Weber in the amount of $75,619. The jury found no cause as to Defendants Paul Meyer, Justice for Native First People, LLC, and C.B. Brooks LLC. The jury found in favor of Defendants Dustin Parker and Nora Weber as to their recoupment counterclaim in the amount of $298,000, to be offset against the amount of $75,619 awarded to Plaintiff, all pursuant to the jury verdict rendered on December 11, 2025.

(Dkt. No. 314, at 2).

**B. Standard of Review**

Under Rule 59(e), "district courts may alter or amend judgment 'to correct a clear error of law or prevent manifest injustice.'" *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Collision v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994)). "A court may grant a Rule 59(e) motion 'only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020) (internal quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)). Further, "[t]he standard for granting a motion to amend or alter the judgment pursuant to Fed. R. Civ. P. 59(e) in the Second Circuit is strict and reconsideration will generally be denied." *Marshall v. United States*, 368 F. Supp. 3d 674, 677 (S.D.N.Y. 2019) (internal quotations and citation omitted). "An alteration or amendment 'is appropriate if the court in the original judgment has failed to give relief on a claim on which it has found that the party is entitled to

relief.'" *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 623 (E.D.N.Y. 2020) (quoting *Continental Cas. Co. v. Howard*, 775 F.2d 876, 883 (7th Cir. 1985)).

**C. Analysis**

The Nation asks the Court to alter or amend the judgment to state that the total damages awarded were $151,238 ($75,619 as to Parker and $75,619 as to Weber), not $75,619 as to both defendants, as it states presently. (Dkt. No. 323-1, at 14). The Nation argues that "[t]aken together, the Verdict Sheet and the Jury Instructions confirm the jury awarded separate judgments in the amount of $75,619 against each Dustin Parker and Nora Weber," and that there is "no basis to conclude that the separately-listed damages awards are a redundant statement by the jury of a single joint and several award" since the jury instructions "made no mention . . . of the concept of joint and several liability." (Dkt. No. 323-1, at 8).

The Court understands that the Nation is arguing that because there was no inconsistency in the jury's verdict or damages award, the Court's entry of judgment reflecting a single award of $75,619 "results in manifest injustice," and must be corrected. (*See* Dkt. No. 323-1, at 14 (arguing that because "[t]he separate damages recorded on the Verdict Sheet were . . . fully consistent with the Jury Instructions and the Verdict Sheet which invited separate damages for separate defendants . . . there was no 'inconsistency' requiring an objection lest it be waived")). And had there been no discussion of damages following the verdict and had Court had entered judgment without that discussion, the Nation's argument might be more persuasive. However, after taking the verdict, rather than excusing the jury, the Court explained that there might be "one additional question" and asked the jury to return to the jury room while the Court spoke with the parties. (T. 697). The Court then confirmed with all counsel that "because there is joint and several liability, this is a damages award of a total of . . . $75,619." (T. 697). The Nation's counsel initially responded that it was "a confusing arithmetic that was done here," and that he

did not know whether the Court would be "willing to ask the jury for clarification on what they intended there, but certainly we pled joint and several liability." (T. 698). The Court then asked: "So given this verdict, you would agree that the total damages awarded to the plaintiff would be $75, 619?" and Counsel replied: "Yes, your Honor." (T. 698). Explaining to counsel that that was the "question" the Court "wanted to shore up," the Court asked for the jury to be returned to the courtroom and excused the panel. (T. 698). The Nation glosses over this discussion in its motion, stating on the last page of its memorandum of law that the "brief exchange between the Court and counsel . . . does not preclude or inhibit this motion" because the "motion is directed not at the Verdict Sheet but at the Judgment itself." (Dkt. No. 323-1, at 14). However, "[i]t is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006). Indeed, "[t]he requirement of a timely exception is not merely a technicality. Its function 'is to give the court and the opposing party the opportunity to correct an error in the conduct of the trial.'" *Id.* (quoting *Barry v. Manglass*, 55 N.Y.2d 803, 805–06 (1981))). And in this case, the Judgment is a direct reflection of the Court's discussion with counsel and counsels' agreement with the Court's interpretation of the Verdict Sheet, a response the Court relied on in discharging the jury. The Court therefore finds the Nation waived objection and that there was no error in the Judgement, which was recorded consistently with Verdict Sheet and the parties' agreement.[7]

This does not end the inquiry, however, for a court may grant relief from judgment under Rule 59(e) even when objection has been waived, upon a finding of "fundamental error."

[7] In addition, the Parker Defendants correctly cite to the fact that the Nation asked for a single unified damages award in its closing argument: "Based on all of the above, we ask you to return a verdict in favor of the Cayuga Nation against each and every defendant in the amout of $3,150,870.00." (Dkt. No. 331, at 12 (quoting T. 659)).

*Salamone v. Douglas Marine Corp.*, 111 F.4th 221, 233 (2d Cir. 2024). The fundamental-error standard is "akin to the plain error standard applicable to criminal cases," but "'more stringent.'" *Id.* (quoting *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004)). It is "applied when a party seeks relief from a final judgment after having bypassed the normal opportunity to present his objection—as when the party seeks such relief on the basis of inconsistent findings in a jury verdict despite having failed to object to the inconsistency before the jury was discharged." *Id.* But the Nation advances no such argument in this case; it maintains that "[i]t is challenging the Judgment because it does not properly reflect the verdict." (Dkt. No. 332, at 6).

The Nation further requests that the Court alter judgment to reflect its entitlement to an award of treble damages under RICO, 18 U.S.C. § 1964(c). (Dkt. No. 323-1, at 10). The Parker Defendants do not object to this request. The Court therefore directs the Clerk to alter the Judgment accordingly.

Accordingly, the Nation's motion to alter or amend judgment is denied in part and granted in part.

## V. MOTIONS FOR ATTORNEYS' FEES AND COSTS

### A. Standard of Review

"The American rule is that, absent a statute providing otherwise, the parties to litigation pay their own attorney fees regardless of outcome." *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 394 (2d Cir. 2013) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985)). "There is . . . a narrow exception to this rule for cases that have been prosecuted in bad faith." *Id.* (citing *Eisemann v. Greene*, 204 F.3d 393, 395–96 (2d Cir. 2000)). "Under its inherent powers to supervise and control its own proceedings, a district court has the authority to award attorney's fees to the prevailing party when the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Eisemann*, 204 F. 3d at 395 (quoting *F.D. Rich Co. v.*

*United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). In such cases, "the order to shift fees must be justified by a finding supported by clear evidence that (1) the offending party's claims were entirely without color, and (2) the offending party's claims were made in bad faith" *Mali*, 720 F.3d at 394 (citing *Eisemann*, 204 F.3d at 396). "[T]he trial court has very broad discretion to deny an application to shift fees." *Id.* (citing *Eisemann*, 204 F.3d at 396).

**B. The Nation**

The Nation claims it is entitled, by statute, to an award of attorneys' fees and costs in the amount based on the jury's finding of RICO investment injury. (Dkt. No. 319-9, at 5 (citing 18 U.S.C. § 1964(c)); *see also* Dkt. No. 334)). The Nation has submitted contemporaneous billing records reflecting $875,466.50 for 1,595.1 hours of attorney work, to which the Nation's counsel has "applied a 25% reduction," resulting in a fee request of $656,599.88, and a request for costs in the amount of $5,751.31. (Dkt. No. 319-2, at 16–17; Dkt. No. 319-1, ¶ 25). The Parker Defendants oppose any award of attorneys' fees.[8] (Dkt. No. 338; *see also* Dkt. No. 327-6).

**1. RICO Prevailing Party**

The Parker Defendants argue that the Nation was not a prevailing party on its RICO claim and has no right to an award of fees or costs because "the Nation's RICO recovery [was] entirely consumed by" the Parker Defendants' counterclaim award. (Dkt. No. 327-6, at 12). The Nation responds that "an award of attorneys' fees to the Nation is mandated by 18 U.S.C. § 1964(c) because it proved injury to its business or property." (Dkt. No. 334, at 7). The Court agrees with the Nation.

[8] Defendant Meyer also opposes the Nation's receipt of any award of attorneys' fees. (Dkt. No. 339). As the Nation does not seek attorneys' fees from Defendant Meyer, the Court has not considered his opposition in deciding the present motion.

RICO states, in relevant part that: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). To recover fees under RICO's fee provision, "[a]ll that is required is an injury"; if an "an injury [is] found . . . the award of attorney's fees [is] automatic." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 412 (2d Cir. 1989) (considering fee application under Clayton Act).[9]

The jury returned a verdict finding the Nation proved "each and every element of its 18 U.S.C. § 1962(a) RICO investment *injury* claim" and that the Parker Defendants' conduct caused $75,691 in damages to the Nation. (Dkt. No. 310, at 2 (emphasis added)). Thus, an award of attorneys' fees is "automatic." *U.S. Football League*, 887 F.2d at 412. Although the Parker Defendants' $298,000 recovery on their conversion claim subsumed the Nation's RICO damages award, they offer no legal authority for the proposition that a damages award must be collectable to trigger attorneys' fees under RICO. To the contrary, as discussed above, the trigger for attorneys' fees is a finding of injury. So long as injury is found, courts have awarded attorneys' fees under RICO—even when only nominal damages have been awarded. *See*, *e.g.*, *United Realty Advisors, LP v. Verschleiser*, No. 14-cv-5903, 2023 WL 4141545, at *4, 2023 U.S. Dist. LEXIS 108675, at *11–12 (S.D.N.Y. June 23, 2023) (finding mandatory language of 18 U.S.C. § 1964(c) required award of attorneys' fees even though jury awarded only nominal damages, explaining that such an award "does not cast doubt on this explicit finding of RICO injury" but

[9] "Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act," *Holmes v. Sec. Invs. Prot. Corp.*, 503 U.S. 258, 267 (1992), and because "the fee provision of the Clayton Act, 15 U.S.C. § 15(a) . . . is virtually identical to the mandatory fee provision of § 1964(c)," *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1168 (2d Cir. 1993), courts often look to Clayton Act attorneys' fees cases for guidance in considering applications for attorneys' fees under RICO's fee provision, 18 U.S.C. § 1964(c), *see*, *e.g.*, *id.* (discussing Clayton Act attorneys' fees cases in considering RICO attorneys' fees).

"merely indicate[d] that the jury adhered to . . . the Court's instruction to 'award nominal damages if, upon finding that some injury resulted from a given unlawful act,' the jury could not 'compute monetary damages' with reasonable certainty"). Accordingly, the Court finds the Nation is entitled to an award of attorneys' fees and costs.

### 2. Rule 68 Offer of Judgment

Before reaching the substance of the Nation's fee request, the Court addresses the Parker Defendants' argument that their pre-trial Rule 68 offer of judgment bars all post-offer attorneys' fees and costs because their $1,000 offer exceeded the Nation's damages recovery.[10] (Dkt. No. 338, at 15). The Nation disagrees. (Dkt. No. 319-9, at 8).

Federal Rule of Civil Procedure 68 provides in relevant part:

> [A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued . . . . If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68(a), (d). "Rule 68 is a cost-shifting rule designed to encourage settlements without the burdens of additional litigation." *Stanczyk v. City of New York*, 752 F.3d 273, 280 (2d Cir. 2014) (quoting *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006)). "Rule 68, however, precludes a plaintiff from recovering post-offer costs if (a) the defendant timely serves plaintiff with an offer of judgment, (b) plaintiff rejects the offer, and (c) plaintiff prevails but obtains a judgment less than the rejected offer." *Id.* (citing Fed. R. Civ. P. 68(d)).

On November 21, 2025, the Parker Defendants made the following offer of judgment to the Nation:

> 1. The Parker Defendants will allow the Nation to take a judgment in this matter in the amount of One Thousand Dollars ($1,000), inclusive of all

[10] The Parker Defendants rely on the same argument in support of their claim that they are entitled to post-offer attorneys' fees and costs. (Dkt. No. 327-6, at 13–15).

> attorneys' fees and costs accrued herein by the Nation, up to and including the date upon which the Nation receives service of this offer.
>
> 2. Acceptance of this offer of judgment will act to release and discharge the Parker Defendants from all claims alleged by the Nation in the above-referenced action as well as any other claims arising from the alleged acts or omissions of Parker Defendants, as described in the Complaint.

(Dkt. No. 327-5, at 2). The Nation did not accept the offer. The jury awarded the Nation, as reflected in the judgment, $75,619, which, when trebled, amounts to $226,857. (Dkt. No. 314, at 2). The Nation collects nothing ($0) on that judgment, however, because it was offset, in its entirety, by the Parker Defendants' $298,000 recoupment counterclaim award. The Parker Defendants therefore argue that that their $1,000 offer of judgment exceeded the Nation's recovery and bars post-offer attorneys' fees and costs. (Dkt. No. 338, at 16).

Rule 68 allows "a party defending against a claim" to serve an offer of judgment on "an opposing party." Fed. R. Civ. P. 68(a). Here, as the "party defending against" the Nation's RICO § 1962(a) investment injury claim, the Parker Defendants, pursuant to Rule 68, served a $1,000 offer of judgment on the opposing party—the Nation. However, because it was the Parker Defendants that brought the recoupment counterclaim, and Rule 68 "has no application to offers made by" a party bringing a claim, *Delta Air Lines, Inc. v. Aug.*, 450 U.S. 346, 350 (1981), the Court looks only to the judgment the Nation obtained, $226,857, not to the amount recovered after offset by counterclaim, in determining whether the judgment the Nation obtained was more favorable than the Parker Defendants' offer. *See Cornelius v. Rollins Ranches, LLC*, No. 25-11231, 2026 WL 1481196, at *2, 2026 U.S. App. LEXIS 15084, at *3–4 (11th Cir. May 27, 2026) (finding the defendant's $10,000 Rule 68 offer did not bar award of post-offer attorneys' fees even though the plaintiff's award ($10,903.63), when offset by the defendant's counterclaim award ($2,959.90), was less than $10,000, explaining that because the defendant "could not

make a Rule 68 offer on its own claim," and that court "look[ed] only to the value of [the plaintiff's] FLSA overtime claim that [the defendant] was defending against . . . rather than that amount offset by [the defendant's] counterclaim."). Thus, the Court finds that because the judgment the Nation obtained on its RICO claim, $226,857 was more favorable than the Parker Defendants' $1,000 offer of judgment, Rule 68 does not bar post-offer attorneys' fees and costs. Having addressed Parker Defendants' initial arguments, the Court turns to the Nation's fee application.

### 3. Presumptively Reasonable Fee

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011). Courts in the Second Circuit generally use the lodestar, or "presumptively reasonable fee," approach to calculate reasonable attorneys' fees. *See Lilly v. City of New York*, 934 F.3d 222, 229 (2d Cir. 2019). This approach requires a district court to set a "reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Id.* at 230 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals. "[T]he district court . . . bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184. "[T]he essential goal in shifting fees . . . is to do rough

justice, not to achieve auditing perfection." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

**a. Reasonable Hourly Rates**

The Supreme Court has explained that district courts should generally use the "prevailing market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *See Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 200–01 (N.D.N.Y. 2019). The Court notes that the legal work performed in this case, aside from the instant motion, occurred between 2022, when the Nation filed its complaint, (Dkt. No. 1), and 2025, when the matter went to trial. A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $250–$350 for partners or experienced practitioners, i.e., those with more than twenty years of experience; and $165–$200 for associates or lesser-experienced attorneys. *See Krause v. Kelahan*, No. 17-cv-1045, 2026 WL 1686147, at *2, 2026 U.S. Dist. LEXIS 132040, at *5 (N.D.N.Y. June 10, 2026)[11]; *see also Sadowski v. Urbanspotlite LLC*, No. 22-cv-887, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15 (N.D.N.Y. Apr. 7, 2023); *Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022).

Here, the Nation seeks hourly rates greater than reasonable in-district rates, ranging from $400 to $1,180 for partners and $425 to $450 for associates or lesser experienced attorneys. (*See*

[11] In *Krause*, the court ultimately awarded an hourly rate of $365 for the work of the plaintiffs' counsel in recognition of "the favorable verdict, the successful defense of that verdict on appeal (over a divided panel, no less), and . . . their years of experience." 2026 WL 1686147, at *3, 2026 U.S. Dist. LEXIS 132040, at *7.

*generally* Dkt. No. 319-2). Of the hours billed, there are 1,365.7 partner hours and 229.4 associate or lesser-experienced attorney ("other attorney") hours.

Nevertheless, the Court will undertake a case-specific inquiry to determine reasonable hourly rates. Such an inquiry includes examination of case-specific factors, including "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly*, 934 F.3d at 228 (quoting *Arbor Hill*, 522 F.3d at 186 n.3).

The Court has considered he time and labor required to litigate this case over the course of nearly four years, the not insignificant novelty and difficulty of the questions presented by this RICO litigation, the relatively high level of skill required to litigate this action from complaint through jury trial. The Nation's counsel represents that that "rates charged . . . are in line with the prevailing market rates for partners in . . . firms in Central and Western New York, specifically litigation partners who are fit to try complex federal cases." (Dkt. No. 319-9, at 15). David Burch and Michael Nicholson handled the vast majority of this case, including the jury trial, and are Partners at Barclay Damon and have extensive federal experience and as well as experience in complex litigation. (Dkt. No. 319-4, at 2–8; Dkt. No. 319-5, at 2–4). Daniel French, also a Partner at Barclay Damon, has been practicing for approximately thirty years and has extensive federal experience. (Dkt. No. 319-6, at 2–6). Kayla Arias, Counsel at Barclay Damon, has been

admitted to practice in New York for approximately ten years and has experience in federal court. (Dkt. No. 319-1, 15; Dkt. No. 319-7, at 2). Jennifer Hopkins, an Associate at Barclay Damon, was admitted to practice in 2022 and also has federal court experience. (Dkt. No. 319-1, ¶ 16). Based on the complexity of this case, the difficulty of the legal questions presented, and the experience of the attorneys, the Court finds the reasonable hourly rate to be $350 per hour for Burch, Nicholson, and French and $200 per hour for Arias and Hopkins.

**b. Reasonable Number of Hours**

Having determined the rates to be applied to services performed by the Nation's counsel, the Court must next determine "the appropriate billable hours expended" to calculate the overall fee award. *See Lilly*, 934 F.3d at 230. A fee applicant "bears the burden of documenting the hours spent by counsel, and the reasonableness thereof." *Brooks v. Roberts*, 501 F. Supp. 3d 103, 114 (N.D.N.Y. 2020) (quotation marks omitted). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

The Nation submitted billing records showing 1,595.10 hours of attorney work in this action and has submitted contemporaneous time records in support of its application. (*See generally* Dkt. No. 319-2). In a declaration, Attorney Burch states that prior to submitting the present fee application, "exercising [his] judgment and discretion as the billing attorney," he "reduced the requested fees" by: excising "time for which the narrative description appeared redundant or overlapping with other work performed"; removing any block-billed entries that included work on other Nation matters; removing seven timekeepers "who performed isolated tasks early, or during the middle course of these proceedings," which amounted to "a reduction of over $20,000 in fees"; removing any fee entry relating to defendants who were dismissed from

this action, including the Meyer defendants; and applying "a 25% reduction in the fees." (Dkt. No. 319-1, ¶¶ 18–23).

The Parker Defendants argue that the jury rejected the Nation's damages theory "nearly in its entirety," the Nation's 25 percent reduction does not adequately account for its failure to prove its RICO theory as to the Meyer Defendants, the Nation "inflated the costs of this litigation," by failing to "present adequately supported expert theories, resulting in multiple rounds of motion practice," notes that the Court excluded the Nation's cannabis damages theory from trial, and asserts that any fee award "must be assessed in light of the overall outcome." (Dkt. No. 338, at 5–9). The Parker Defendants' argument has merit. The Nation named nine defendants and asserted three RICO causes of action in the Complaint, (Dkt. No. 1), and sought $3,150,807 in damages at trial, (T. 659), but only prevailed against two defendants on one cause of action and only received a verdict of $76,619. Moreover, the Court had to prod the Nation to brief significant issues necessary to resolve the case in the weeks leading up to trial, resulting in a number of additional motions and briefs. (*See*, *e.g.* Dkt. Nos. 226 (directing further briefing), 227 (same), 233 (same)).

"In determining a reasonable fee, the district court 'should exclude . . . hours that were not "reasonably expended,"' including 'hours that are excessive, redundant, or otherwise unnecessary.'" *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 28 (N.D.N.Y. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "The relevant inquiry for the court 'is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Id.* (quoting *Grant*, 973 F.2d at 99). "[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee

application'" where hours are excessive. *Id.* (quoting *Kirsch*, 148 F.3d at 173). "In assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion." *Sugarman v. Vill. of Chester*, 213 F. Supp. 2d 304, 311 (S.D.N.Y. 2002) (quotation marks omitted). "On a fee-shifting application, . . . the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015). Rather, "[t]he test is whether the plaintiff 'spen[t] the minimum necessary to litigate the case effectively.'" *Id.* (quoting *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).

Five attorneys billed for work on this case for the Nation: three partners (one of which billed minimal hours), and two lesser-experienced attorneys. (*See generally* Dkt. No. 319-2). From commencement, in January 2022, until the month before trial, November 2025, only Attorneys Burch and Nicholson worked on this case on behalf of the Nation. (*Id.* at 2–13). Given their extensive experience with complex litigation, the Court agrees with the Nation that up to the point of trial, "this case was efficiently staffed with only necessary attorneys, avoiding internal redundancies and junior-level staffing without full expertise." (Dkt. No. 319, ¶ 11). However, notwithstanding the fact that the parties had been actively litigating this case since its commencement in early 2022, given the number of unresolved legal issues leading into trial despite the hundreds of hours billed up to that point, all of which required Court-directed further briefing and additional attorney time, the Court finds there is a basis for concluding there were inefficiencies. Further, as discussed below, the Court finds there are certain billing areas that warrant reduction and has considered the overall outcome in reaching a determination as to the reasonable number of hours in this case.

**i. Counterclaims and Third-Party Complaint**

The billing entries include 189 partner hours for work defending against the Parker and Meyer Defendants' non-RICO counterclaims and non-RICO third-party complaint against Clinton Halftown, who was also represented by the Nation's counsel, (Dkt. Nos. 60, 61, 64, 65; *see* also Dkt. No. 319-2, at 3–5 (billing entries from 2022 dated September 9, 15, 19, 21, 22, 23, 26, 30; October 3, 4, 5, 6, 7, 10, 13, 21, 22, 23, 24, 25, 26, 27; and November 1, 2, 3, 4, 5, 7, 8, 10, totaling 189 partner hours)). The Court declines to award fees for these hours. The Nation provides no caselaw in support of its request for attorneys' fees in defending against these claims. The Court therefore finds the inclusion of these billing entries warrants a reduction.

**ii. Defendants Other than Parker Defendants**

Although Attorney Burch indicated that he endeavored to remove billing entries concerning the Meyer Defendants, (Dkt. No. 319-1, ¶ 22), the billing records from the pre-trial time period contain entries totaling 63.9 partner hours for work in connection with the three Meyer Defendants and for the four other Defendants who were dismissed prior to trial. (*See* Dkt. No. 319, at 2 (billing entries dated February 16–21, 2022 for work in connection service of "various defendants"), 5, 8–9, 11–14 (billing entries dated December 17, 2023, January 17, 2024, February 5, 2024, February 7, 2025, August 14 and 25, 2025, October 20, 2025, November 13, 17–18, 2025, and December 4, 2025 for work in connection with Meyer Defendants and defendants dismissed prior to trial)). The Nation is entitled to some recovery as to these hours because they also involved work on the Nation's RICO claims. However, these entries are often block-billed and thus cannot be separated with precision. (*See*, *e.g.*, Dkt. No. 319-2, at 11 (billing 7.9 hours: "Drafted and revised letter motion in NDNY RICO proceedings seeking contempt sanctions against Parker Defendants . . .; conducted legal research and analysis with respect to

motions filed by Parker Defendants and Meyer Defendants in NDNY RICO proceedings")). The Court therefore finds these entries warrant a reduction. *Cf. Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) ("While block-billing is disfavored and may lack the specificity for an award of attorneys' fees, it is not prohibited as long as the court can determine the reasonableness of the work performed.") (internal quotation marks omitted).

**iii. Trial Hours**

Although Attorney Burch represented that he removed all fee entries relating to defendants who were dismissed from this action, including the Meyer Defendants, counsel does not appear to have made any reductions to trial hours to account for time spent on the Nation's case against the Meyer Defendants or in defending against the Parker Defendants' counter claim. Billing records reflect the attendance of 5 attorneys at trial who collectively billed 195.4 trial hours (101 partner hours and 94.4 other-attorney hours) for a four-day trial. (Dkt. No. 319-2, at 16). Having presided over the trial, the Court is cognizant that a majority of the time spent at trial concerned the RICO claims against the Parker Defendants but nonetheless concludes that a reduction is necessary to account for time spent on the Meyer Defendants and defending against the counterclaim.

While all five attorneys attended the trial (or parts thereof) only Attorneys Burch and Nicholson participated in the trial itself. The Court therefore considers whether overstaffing of a case results "in needless duplication of work and retention of unnecessary personnel." *See Mazzei v. Money Store*, No. 01-cv-5694, 2015 WL 2129675, at *4, 2015 U.S. Dist. LEXIS 59397, at *10 (S.D.N.Y. May 6, 2015) (quoting *Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (summary order)); *Osterweil*, 92 F. Supp. 3d at 32–33 (determining that a

reduction of a fee award was appropriate where overstaffing resulted in unnecessary or otherwise excessive hours).

According to the billing entries, Attorneys French, Arias, and Hopkins attended trial and performed ancillary tasks such as communicating with the Nation, conferring with trial counsel, conducting research, and drafting submissions. (Dkt. No. 319-2, at 16). However, there are also entries for work by Arias and Hopkins dated December 10 and 11, 2025 (totaling 26.6 hours) that are block-billed and reflect almost no task other than attending trial. (*See*, *e.g.*, Dkt. No. 319-2, at 16 (billing entry for December 10, 2025 ("5.8 [hours] [a]ttended trial with Judge Sannes" and "13.3 [hours] [a]ttended day 3 of trial before Judge Sannes. Researched attendance of defendant impact mistrial")). The Court has also taken these records into consideration in determining the reasonable hours in this case.

**4. Fee Award**

Having carefully reviewed the billing records, and based on the Court's familiarity with this case, the Court finds that having proved RICO injury in this legally complex action, the Nation is entitled to an attorneys' fee award. In considering a reasonable fee award the Court has considered the degree of success (or lack thereof) – both in terms of the amount recovered, which was approximately 2.4 percent of the amount sought, the number of defendants found liable, 2 out of 5, and the number of claims on which the Nation prevailed (1 out of 3). The Court has also considered the above-identified issues in billing records, the inclusion of billing entries concerning counterclaims and third-party claims, as well as dismissed defendants, block-billing, and overstaffing at trial. Considering all of the circumstances here, the Court finds that the Nation's proffered 25 percent reduction is insufficient to ensure the Nation is only recovering for its success on its RICO claim against the Parker Defendants. The Court finds a 55 percent reduction reflects a more reasonable number of hours for this case. Accordingly, based on these

factors, the Court applies a 55 percent reduction to the hours billed. *See Lilly*, 934 F.3d at 234 (affirming district court's reduction of fee award, noting that it was "confident that the district court achieved 'rough justice,' if not 'auditing perfection,' in its calculation of the appropriate fee award"); *Brooks*, 501 F. Supp. 3d at 114–15 (imposing an across-the-board reduction of thirty-percent for excessive billing on preliminary briefing, including a motion to dismiss).

The Court finds that a final attorneys' fee award of $235,743.75, as itemized below, is fair and reasonable. *See United Realty Advisors, LP*, 2023 WL 4141545, at *1, 13, 2023 U.S. Dist. LEXIS 108675, at *5, 43 (reducing requested award in RICO case tried over the course of two weeks from more than $2 million to $291,284.46 in RICO case where jury awarded the plaintiffs nominal damages of $1 ($3 when trebled)). As a result, the final attorneys' fee award is as follows:

| Attorneys | Adjusted Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Partners | $350 | 1,365.7 | $477,995.00 |
| Other Attorneys | $200 | 229.4 | $45,880.00 |
| | | 1,595.1 | $523,875.00 |
| **55% Reduction for Final Attorneys' Fees** | | | **$235,743.75** |

### 5. Costs

The Nation requests reimbursement for costs in the amount of $5,751.31. (Dkt. No. 319-3, at 2). "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54. As relevant here, RICO also provides for the recovery of "costs of the suit." 18 U.S.C. § 1964(c).

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League*, 887 F.2d at 416). Attorneys' expenditures on litigation are unnecessary and non-compensable when "they exceed the minimum that a

reasonable paying client would pay absent a fee-shifting arrangement." *City of Syracuse*, 357 F. Supp. 3d at 208 (quoting *Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2160017, at *15, 2010 U.S. Dist. LEXIS 52424, at *46 (E.D.N.Y. 2010)). The Second Circuit has identified that "out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933–34 (2d Cir. 1987)). Courts have construed these categories of expenses as "non-exhaustive." *Deferio v. City of Syracuse*, No. 16-cv-361, 2018 WL 3069200, at *9, 2018 U.S. Dist. LEXIS 103596, at *26–27. (N.D.N.Y. June 21, 2018).

Here, the Court finds that the supporting documentation supplied by Plaintiffs' counsel "evidences reasonable out-of-pocket expenses." *See City of Syracuse*, 357 F. Supp. 3d at 208. The requested expenses include deposition transcript and witness fees, (Dkt. No. 319-2, at 2), both of which are recoverable. *See C.C. ex rel. Camarata v. Polaris Indus., Inc.*, No. 14-cv-0975, 2018 WL 3031848, at *5, 2018 U.S. Dist. LEXIS 101785, at *18 (N.D.N.Y. June 19, 2018) (prevailing party is "ordinarily . . . permitted to recover costs for the original and one copy of [a] transcript[]"); *Cohen v. Bank of N.Y. Mellon Corp.*, No. 11-cv-0456, 2014 WL 1652229, at *1, 2014 U.S. Dist. LEXIS 57829, at *2 (S.D.N.Y. Apr. 24, 2014) (witness fees permissible). Although the Parker Defendants broadly object to costs, they do not specifically argue that the costs sought by the Nation are unreasonable or otherwise inappropriate. Accordingly, the Court grants Plaintiffs' request for $5,751.31 in costs.

### C. Defendant Meyer

Defendant Paul Meyer requests that the Nation be required to pay his attorneys' fees, $34,600 based on its "frivolous . . . conduct" in bringing this action against him. (Dkt. No. 326, at 3). The Nation opposes Meyer's motion. (Dkt. No. 334, at 18–19).

Under RICO § 1964(c) "[a]ny person injured in his business or property by reason of a [RICO] violation may sue therefor in any appropriate United States district court and shall recover . . . the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. 1964(c). Defendant Meyer, however, has not brought an action under § 1964(c); nor has he proved (or claimed) injury to his business or property by reason of a RICO violation. Thus, RICO does not provide a statutory basis for awarding attorneys' fees. Indeed, Defendant Meyer does not claim otherwise.

Defendant Meyer also claims he is entitled to an award of attorneys' fees because the Nation sued him "frivolously," "without any proof," and in order to protect its "ongoing illegal [cigarette] trafficking operation." (Dkt. No. 326, at 2–3). The Nation's case against Meyer, and the Meyer Defendants, was extremely weak and ill-conceived, and the Court has serious concerns about the use of RICO to resolve the dispute between the parties under the circumstances of this case. But given the Meyer Defendants' integral role in securing and financing the two Pipekeepers properties, (*see* T. 286–88, 294–96, 410, 411, 417), the Court cannot conclude that the Nation's claims were "entirely without color," or "were brought in bad faith." *Eisemann*, 204 F.3d at 396. Accordingly, Meyer's motion for attorneys' fees[12] is denied.

**D. Parker Defendants**

The Parker Defendants seek an award of attorneys' fees "under independent fee-shifting doctrines" and an award of $6,630.28 in costs under Rule 54(d)(1), asserting they are the prevailing parties and that Nation pursued this action in bad faith. (Dkt. No. 327-6, at 11–12, 17). The Nation opposes the Parker Defendants' motion. (Dkt. No. 334).

[12] Meyer does not seek costs.

**1. Prevailing Party**

As the Court has found the Nation has established RICO injury, to the extent the Parker Defendants argue they are entitled to attorneys' fees as the prevailing party on the RICO claim, this argument is without merit. However, because the Parker Defendants prevailed against the Nation on their recoupment counterclaim, the Court considers whether this recovery provides any basis for an award of attorneys' fees.

As the Court explained above, unless required by statute, the American rule generally requires parties pay their own attorneys' fees. *See Sierra Club*, 776 F.2d at 390. The Parker Defendants have not identified any statutory basis for awarding attorneys' fees on their recoupment counterclaim and Rule 68, as discussed, is inapplicable to their counterclaim. The Court therefore considers the Parker Defendants' bad faith argument.

According to the Parker Defendants, the Nation "engaged in vexatious conduct designed to weaponize RICO as a tool to enforce its monopoly over sales on reservation territory and to punish the Parker Defendants for operating a competing business." (Dkt. No. 327-6, at 18). While the Court has serious questions as to propriety of this litigation in light of the evidence that the Nation does not appear to be in compliance with New York State Tax Law itself, the Court cannot say the Nation's claims were "entirely without color." *Eisemann*, 204 F.3d at 396. It was undisputed at trial that the Parker Defendants sold tens of thousands, if not millions, of unstamped cigarettes on the Reservation, and was the Nation's primary competitor. On the other hand, there was evidence at trial that the Nation utilized extreme measures, including a midnight invasion of the Parker Defendants' store and confiscation of hundreds of thousands of dollars of the Parker Defendants' property, in an effort to shut down the Parker Defendants' store. Further, there is no question that the Nation pursued this action with the goal of permanently ending the Parker Defendants' cigarette business. But as the evidence also suggested that there was a

serious dispute between the parties regarding the legality of the Parker Defendants' unstamped cigarette sales on the Reservation and as the Parker Defendants showed no inclination toward ceasing or pausing operations, the Court cannot say the Nation's pursuit of relief in court was "motivated by improper purposes such as harassment or delay." *Id.* (quotation marks omitted). Accordingly, the Court, in its discretion, declines to award attorneys' fees.

**2. Costs**

As noted, the Parker Defendants also seek costs under Rule 54(d) in the amount of $6,630.28 in connection with their counterclaim. (Dkt. No. 327-6, at 25). The Nation objects on grounds that the Parker Defendants are not prevailing parties and that sovereign immunity precludes the entry of an affirmative monetary judgment against a sovereign Indian nation. (Dkt. No. 334, at 17). The Court disagrees. First, nothing precludes a court from awarding costs to both parties where, as here, they have prevailed on different grounds. *See, e.g.*, *Marilyn Miglin, Inc. v. Gottex Indus., Inc.*, No. 90-cv-2915, 1992 WL 170673, at *15, 1992 U.S. Dist. LEXIS 10216, at *41 (S.D.N.Y. July 9, 1992) (directing that "judgment shall be entered in favor of [the defendant] on the claims advanced by [the plaintiff], and judgment shall be entered in favor of [the plaintiff] on the claims asserted by [the defendant]" and that "[c]osts shall be awarded to the prevailing party in each instance"). Second, Rule 54(d)(1)'s only exclusion is for costs against the United States, "unless allowed by law," and the Nation cites no caselaw in support of their contention, nor is the Court aware of any, that limits awarding costs to a prevailing party on a claim that is otherwise properly before the Court. As the Nation does not specifically argue that the costs the Parker Defendants seek, which are largely for deposition fees and postage, are unreasonable or otherwise inappropriate, the Court grants the Parker Defendants' request for $6,630.28 in costs.

## VI. SPOLIATION SANCTIONS

On August 14, 2025, the Nation filed a motion under Rule 37 seeking sanctions against the Parker Defendants for spoliation of the Montezuma Pipekeepers' sales ledgers for cannabis and cannabis-related products. (Dkt. No. 163; *see also* Dkt. No. 193 (Parker Defendants' Response in Opposition); Dkt. No. 203 (Reply)). In a Memorandum-Decision and Order issued on November 6, 2025, the Court granted the Nation's motion. (Dkt. No. 227, at 13). The Nation requested the entry of default judgment in its favor, or, in the alternative, an adverse inference instruction regarding injury to its cannabis business and damages. (*Id.* at 8–10). The Court observed that default judgment was a "drastic remedy" and, as it had yet to determine whether damages for injury to the Nation's cannabis business were recoverable under RICO, that there was a question as to whether an adverse inference instruction would be warranted, and directed further briefing. (*Id.* at 12 & n.1). The Court noted the possibility that an adverse inference instruction might not be warranted if the Court excluded cannabis-related damages or injury at trial but advised the Parker Defendants that as the "'no harm no foul' standard for evaluating discovery sanctions" had been rejected in the Second Circuit and that "given their intentional disposal of cannabis sales records over the course of years, some form of sanctions are likely justified." *Id.* at 12 n.1 (citing S. *New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148–49 (2d Cir. 2010)). The parties filed additional briefing. (Dkt. Nos. 241, 279, 295). In its final brief on the issue of sanctions, the Nation requested an adverse inference instruction be given to the jury (it was not) and for an award of "the Nation's attorneys' fees and costs related to (i) its May 23, 2025 motion to compel, that resulted in the preservation Order, and (ii) the Nation's August 14, 2025 motion for spoliation sanctions." (Dkt. No. 295, at 2 (internal citations omitted) (citing Dkt. Nos. 151, 153, 163)).

In determining whether to impose sanctions under Rule 37, the Court previously considered "(1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." (Dkt. No. 227, at 9 (quoting *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018)). The Court incorporates its analysis here. (*Id.* at 9–10). The Court has considered the litigation in this case, and has found that an adverse inference instruction or lesser sanction would either be irrelevant or serve little purpose. However, the Court has also found that the Parker Defendants' conduct warrants a penalty. The Court therefore grants the Nation's request for attorneys' fees in connection with its motion to compel and spoliation motion and finds such an award sufficient to penalize the Parker Defendants for their conduct and also serves "to deter those who might be tempted to such conduct in the absence of such conduct." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 72 (2d Cir. 1988) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

From the Court's review of the billing records filed by the Nation's counsel, it appears that Attorneys Burch and Nicholson billed 16.9 hours on the motion to compel. Applying the reasonable hourly rate, the fee request for the motion to compel totals $5,915.00:

| Attorney | Date | Hours Billed | Hourly Rate | Total |
|---|---|---|---|---|
| Nicholson | May 22, 2025 | 8.1 | $350.00 | $2,835.00 |
| Nicolson | May 23, 2025 | 7.4 | $350.00 | $2,590.00 |
| Burch | May 23, 2025 | 1.4 | $350.00 | $490.00 |
| | | | **Total Hours** | **16.9** |
| | | | **Total Attorneys' Fees** | **$5,915.00** |

(Dkt. No. 319-2, at 10). As to the spoliation motion, the billing records reflect that Attorneys Burch and Nicholson billed 50.8 hours. Applying the reasonable hourly rate, the fee request for the spoliation request totals $17,780.00:

| Attorney | Date | Hours Billed | Hourly Rate | Total |
|---|---|---|---|---|
| Nicholson | June 22, 2025 | 7.5 | $350.00 | $2,625.00 |
| Burch | July 3, 2025 | 0.7 | $350.00 | $245.00 |
| Nicholson | August 13, 2025 | 8.4 | $350.00 | $2,940.00 |
| Nicholson | August 14, 2025 | 8.2 | $350.00 | $2,870.00 |
| Nicholson | September 2, 2025 | 8.4 | $350.00 | $2,940.00 |
| Nicholson | September 3, 2025 | 8.9 | $350.00 | $3,115.00 |
| Nicholson | September 4, 2025 | 8.7 | $350.00 | $3,045.00 |
| | | | **Total Hours** | **50.8** |
| | | | **Total Attorneys' Fees** | **$17,780.00** |

(*Id.* at 11). The total for both motions is: $23,695.00.

Using these records as a guide, and considering that the Court's above award of attorneys' fees encompasses these motions, the Court finds a sanction award of $20,000 is appropriate in this case. To the extent there is any concern regarding a double recovery, the Court notes that it has applied a significant across-the-board reduction to the overall award of attorneys' fees and that even if it is a double recovery, the Court is imposing this award as a penalty and for the purpose of deterring destruction of court-ordered discovery in this case. *See*, *e.g.*, *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994) (rejecting argument that the award of attorneys' fees as Rule 11 sanctions in connection with two periods of the underlying litigation duplicated the attorneys' fees awarded in the judgment, finding the "double-recovery theory provides no basis for setting aside" award of sanctions "since the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses"). Accordingly, the Court directs the Parker Defendants to pay an additional $20,000 in attorneys' fees to the Nation as a sanction for spoliation of evidence.

## VII. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Parker Defendants' Motion for Judgment as a Matter of Law and for Remittitur (Dkt. No. 325) is **DENIED;** and it is further

**ORDERED** that the Clerk is respectfully directed to terminate Dkt. No. 324 as it was amended by Dkt. No. 325; and it is further

**ORDERED** that the Nation's Motion to Alter or Amend the Judgment (Dkt. No. 323) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the Clerk is directed to correct the Judgment (Dkt. No. 314) as follows (changes are underlined):

> IT IS FURTHER ORDERED AND ADJUDGED that the jury returned a verdict in favor of the Plaintiff as to Defendants Dustin Parker and Nora Weber in the amount of $75,619, which is trebled under 18 U.S.C. § 1964(c) to $226,857. The jury found no cause as to Defendants Paul Meyer, Justice for Native First People, LLC, and C.B. Brooks LLC. The jury found in favor of Defendants Dustin Parker and Nora Weber as to their recoupment counterclaim in the amount of $298,000, to be offset against the amount of $226,857 awarded to Plaintiff, all pursuant to the jury verdict rendered on December 11, 2025, before the Honorable Brenda K. Sannes.

And it is further **ORDERED** that the Nation's Motion for Attorneys' Fees and Costs (Dkt. No. 319) is **GRANTED** in the amount of $235,743.75 in attorneys' fees and $5,751.31 in costs, $20,000 in attorneys' fees for spoliation, totaling $261,495.06; and it is further

**ORDERED** that Defendant Meyer's Motion for Attorneys' Fees (Dkt. No. 326) is **DENIED**; and it is further

**ORDERED** that the Parker Defendants' Motion for Attorneys' Fees and Costs (Dkt. No. 327) is **GRANTED in part and DENIED in part** and the Parker Defendants are awarded $6,630.28 in costs.

**IT IS SO ORDERED.**

Dated: September 16, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge